## PUBLIC SERVICE COMMISSION OF PUERTO RICO v. HAVEMEYER ET AL.

No. 115. Argued December 12, 13, 1935.—Decided January 6, 1936.

508

*Mr. William Cattron Rigby,* with whom *Mr. Benjamin J. Horton,* Attorney General of Puerto Rico, and *Mr. Nathan R. Margold* were on the brief, for petitioner.

*Mr. Ralph S. Rounds* for respondents.

MR. JUSTICE BUTLER delivered the opinion of the Court.

March 19, 1901, the executive council of Puerto Rico granted to the Guanica Land Company, a New Jersey corporation, assignable franchises including the privilege to take water from Guanica Lake for the irrigation of the company's lands. Russell & Company, Sucesores, Sociedad en Comandita, a limited civil agricultural partnership composed of Havemeyer and the other respondents as partners, succeeded to that privilege. March 8, 1929, the public service commission of Puerto Rico made an order canceling it. The district court of San Juan and the supreme court successively sustained the order. Respond-

ents' final appeal was to the Circuit Court of Appeals; it held the order unreasonable, reversed the judgment of the supreme court and remanded the case for further proceedings. 74 F. (2d) 637.

Notwithstanding absence of cross petition, we may consider respondents' insistence that the commission was without authority to make the order. *Langnes* v. *Green,* 282 U. S. 531, 536–538. The petition presents two questions: Whether the Circuit Court of Appeals, a constitutional court of the United States, has jurisdiction to review the commission's order; whether the six individual respondents here are parties in interest entitled to appeal. There is another question adequately raised by the petition though not specified formally as are the others or presented in accordance with the best practice. It is whether the Circuit Court of Appeals erred in holding the order to be unreasonable and in reversing upon that ground the judgment of the supreme court.

The Organic Act of 1900, c. 191, 31 Stat. 77, authorized the creation of an executive council, § 18, and provided: "That all grants of franchises, rights, and privileges or concessions of a public or quasi-public nature shall be made by the executive council, with the approval of the governor, and all franchises granted in Porto Rico shall be reported to Congress, which hereby reserves the power to annul or modify the same." § 32. The Joint Resolution of May 1, 1900, § 3, 31 Stat. 716, required that all such grants "shall provide that the same shall be subject to amendment, alteration, or repeal."

The franchise, in addition to conferring the privilege of using the water of Guanica Lake for irrigation of their lands, authorized the grantees to construct a wharf in, and to build and operate a railroad along, the harbor of Guanica bay into which flow the waters of the lake. The irrigation privilege is the only one here involved; its substance follows: The grant was for 99 years and extended

to the land company, its successors and assigns. They were authorized to construct and operate a dam across the outlet for the purpose of regulating the flow of the water from the lake. They were given the right to take up to 20,000,000 gallons a day from the outlet or elsewhere, by gravity, through channels or by pumps, and to construct and operate works therefor. The franchise declared that nothing therein should be construed to permit grantees to raise or maintain the height of the lake above its customary level during the rainy season in years of average and usual rainfall, and they were declared liable for all damage sustained by abutting owners by reason of unduly raising the waters. They were authorized to acquire by eminent domain private lands needed for their works, and were required to have plans for the same approved by the commissioner of the interior before commencing work. They were required to pay $300 per year for the irrigation privilege, and in case of default the commissioner might stop the flow of the water. It was provided " that the franchises, privileges and concessions hereby granted, shall be subject to amendment, alteration or repeal."

The Second Organic Act, approved March 2, 1917, c. 145, 39 Stat. 951, declares the authority of the legislature shall extend "to all matters of a legislative character not locally inapplicable," § 37, but expressly reserves to Congress the power to annul acts of the legislature. § 34. The Act also creates a public service commission and declares that all grants of franchises, rights, and privileges of a public or quasi-public nature shall be made by it but not to be effective until approved by the governor and to be subject to the power of Congress "to annul or modify the same." § 38. It requires such grants to provide that they shall be subject to amendment, alteration or repeal. § 39. Section 38 was by § 6, Act of March 4, 1927, amended to empower and direct the commission to discharge such additional duties and functions as might be conferred upon it by the legislature. 44 Stat. 1420.

The Laws of Puerto Rico, 1917, Act No. 70, requires that all grants of franchises shall be subject to amendment, alteration or repeal by the commission (§ 54), and declares that it shall have power to alter, amend, modify or repeal any franchise that may have been granted by the executive council and shall exercise all the rights and powers reserved to the executive council by any such franchise or privilege or by any law. § 60.

Act No. 70 also regulates the commission's procedure and the appeals from its orders. The testimony before the commission must be taken down. § 68. Any party to the proceedings thereby affected may appeal from its orders to the district court of San Juan. Petitions for appeals include assignments of errors. § 78. The commission is brought in as party defendant; upon the filing of its answer, the case is at issue. The commission is required to certify to the court its proceedings including the testimony, findings, opinions and orders. §§ 79–82. No evidence may be taken on appeal. § 86. The court is required to determine whether the order appealed from is reasonable and in accordance with law. § 83. If found to be so, the court must dismiss the appeal and affirm the order. If found unreasonable or based upon incompetent evidence or otherwise not in conformity with law, the court must reverse the order or remand to the commission. § 85. A party aggrieved by the final judgment of the district court may appeal to the supreme court in the same manner and form as in other cases. § 90. Appeal from the judgment of that court is to the Circuit Court of Appeals for the First Circuit. Judicial Code, § 128 (a) (Fourth). 28 U. S. C., § 225 (a) (Fourth). The attorney general is required, upon request of the commission, to proceed by mandamus, injunction or quo warranto to enforce the commission's orders. § 94.

February 24, 1928, the municipality of Lajas complained to the commission and to the commissioner of the

interior that the works of the holders of the irrigation privilege were causing irreparable damage by raising waters of the lake above the levels specified in the franchise and thereby flooding privately owned lands and public roads. The commissioner investigated and to the governor reported: Apparently the situation was created by violation of the provisions of the franchise. The holders failed to submit plans as required. The customary levels of the lake mentioned in the franchise have not been determined. The company has borne none of the damages. There was sufficient cause to request the commission to consider repealing the franchise. The governor referred the report to the commission. It called on the parties interested to show cause why it should not totally cancel the franchise.

The South Porto Rico Sugar Company, interested in other privileges, and Russell & Company, holder of the irrigation privilege, appeared specially and objected to the jurisdiction of the commission. Before answering the rule to show cause, they brought a suit in the United States Court for Puerto Rico to enjoin the commission from asserting any jurisdiction over them in respect of the franchise. The court dismissed the bill on the grounds that the suit was premature and that the commission had jurisdiction. The Circuit Court of Appeals affirmed. *South Porto Rico Sugar Co.* v. *Munoz,* 28 F. (2d) 820.

Russell & Company, by its answer to the order to show cause, admits that the water of the lake has been higher than the usual level and has flooded some lands, asserts that it was not raised by the fault of any owners of the franchise, alleges that the holders have spent large sums for works for the taking of water and that cancelation would cause it great loss, maintains that the commission has no jurisdiction over it and says that, although the partnership had no obligation so to do, it has (since the order to show cause) at its own expense taken steps to

lower the waters of the lake to, and also to guarantee that in the future they will not go beyond, customary levels.

Shortly after this answer was interposed, the commission, upon consideration of conditions then existing in and near the flooded area, found partial drainage to be immediately feasible and, by an interlocutory order, called on the holders of the irrigation privilege to prepare a draft of works to lower the level of the lake in order to relieve the overflowed district. The record before us discloses no response or action by the holders.

There was a hearing upon the issues raised by the order to show cause and the answers filed by interested parties. Russell & Company appeared and was heard; much evidence was received. The commission canceled the franchise but only in respect of the irrigation privilege. The report made by the president of the commission shows: The holders of the irrigation privilege controlled the lands through which the water had been accustomed to flow from the lake to the bay. They allowed to accumulate in the outlet soil and debris, for a distance of 100 yards or more, which held back the waters and caused overflow on an opposite side of the lake. From about the middle of 1926 until late in 1928 the waters so raised continued to flood thousands of acres including entire farms and seven or eight kilometers of public roads in the Lajas Valley and so caused damage to private owners and to the community in general.

The district court deemed itself required to decide only whether the order was reasonable and in accordance with law. There was no claim that it rested on incompetent evidence. Upon the record of proceedings, including the evidence introduced before the commission, it held: Under the franchise the holders of the irrigation privilege assumed control of the flow from the lake through the outlet to the bay and had power to raise or lower the level of the waters. They failed to comply with the duty—

voluntarily contracted by them in accepting the franchise—to submit plans of their works to the commissioner for approval. From July, 1926, appellants caused or permitted an excess of water to be held in the lake raising it to heights above the customary levels in years of average rainfall and thereby flooded thousands of acres and caused injury to land owners and to the community in general. The order is reasonable and agreeable to law. The court gave judgment dismissing the appeal and affirming the order.

Respondents took the case upon the same record to the supreme court. It construed the franchise not only to prohibit grantees from causing the water to be raised above the indicated levels but also to require them to prevent its exceeding such levels and to that end imposed upon them the duty to keep the outlet open. It held that, "inasmuch as appellant has failed to comply with the conditions of the franchise," the commission's order was reasonable and in accordance with law and affirmed the judgment of the district court.

On the appeal to the Circuit Court of Appeals, the evidence was omitted from the record. That court, assuming that it was sufficient to support a finding that the holders of the irrigation privilege knowingly permitted obstruction in the outlet to raise the level of the lake, concluded that the order canceling the privilege was "an arbitrary and unreasonable act" and reversed the judgment.

1. First to be considered is respondents' insistence that the commission was not authorized to cancel the irrigation privilege.

That contention has been overruled by both insular courts and the Circuit Court of Appeals on the authority of *South Porto Rico Sugar Co.* v. *Munoz, supra.* While, as to the privilege in question, the original grantee or subsequent holders are not public utilities, the franchise is one of a quasi-public nature. The holders' right to take

the waters depended upon a grant from the public. Civil Code of Puerto Rico, §§ 341, 343, 344. They were endowed with power of eminent domain to acquire *in invitum* lands of others to enable them conveniently to irrigate their lands and effectively to discharge the duties imposed upon them by the franchise. The terms of the grant were a matter of general concern inasmuch as the use of lands, condition of roads and health of people in the vicinity were liable to be adversely affected if the holders of the privilege should permit the waters to overflow contiguous areas.

Implied in every grant of franchise is the condition that it may be lost by misuse. Every such special privilege is subject to termination for breach of condition, whether express or implied, upon which the grant depends. It may be canceled or withdrawn by any procedure that is not repugnant to the established principles of justice. The initial step need not be a suit for mandamus, *quo warranto*, injunction or the like. Essential requirements are satisfied if the withdrawal of the privilege, declared by legislative or executive authority, may be followed by appeal to a court of competent jurisdiction in which the rights of the holders may be determined. *N. Y. Electric Lines* v. *Empire City Subway,* 235 U. S. 179, 194. *Cosmopolitan Club* v. *Virginia,* 208 U. S. 378, 383. *New Orleans Waterworks Co.* v. *Louisiana,* 185 U. S. 336, 346. *Eagle Insurance Co.* v. *Ohio,* 153 U. S. 446, 454. *Chicago Life Ins. Co.* v. *Needles,* 113 U. S. 574, 580. *Terrett* v. *Taylor,* 9 Cranch 43, 51.

The assertion by Congress of power to "annul and modify" franchises granted by the commission and to annul laws enacted by the insular legislature gives rise to no implication that the reserved power was intended to be withheld from insular authorities. Inference to the contrary is a more reasonable one and in harmony with the reasons which underlie the reservation. Local authorities

may ascertain facts and decide questions upon which depends appropriate exertion of the power much more conveniently than may the Congress.

Under the Organic Acts and insular laws the power of the commission to make the order in question is clear. And that is so whether the cancelation was accomplished by exertion of the power to amend, alter and repeal expressly reserved or was effected under the implied rule that such franchises are terminable for breach of condition. Congress has not directly empowered the commission or any other insular authority to exert the reserved power. But it has adequately empowered the insular legislature and created a public service commission in which it vested the functions in respect of franchises that theretofore had been discharged by the executive council. The insular legislature by enactment, obviously not locally inapplicable, empowered the commission to alter, amend, modify or repeal any franchise granted by the executive council. § 60, Act No. 70 of 1917. That authorization unquestionably extends to the cancelation of the irrigation privilege.

2. Petitioner maintains that the judicial power of the United States does not extend to the review of reasonableness of the commission's order and that therefore the Circuit Court of Appeals was without jurisdiction of the appeal. It assumes that the making of the order was merely the exertion of the power to repeal that is expressly reserved in the grant. It says that here involved is a question of the kind of reasonableness of a purely executive decision to exercise a contractual right of the government, and that it is a wholly different kind of question of reasonableness from that involved in the exercise of a power to cancel a franchise where may arise a judicial question whether executive action is confiscatory. And on that basis the commission insists that the repeal in-

volved nothing but the exercise of executive discretion and is therefore not subject to review of the courts.

The reserved power to repeal a grant of special privileges implies that it may be exerted at the pleasure of the legislature or other authority in which the power to repeal is vested. *Tomlinson* v. *Jessup,* 15 Wall. 454, 459. *Miller* v. *State,* 15 Wall. 478, 498. *Railroad Co.* v. *Georgia,* 98 U. S. 359, 365. *Sinking-Fund Cases,* 99 U. S. 700, 720. *Greenwood* v. *Freight Co.,* 105 U. S. 13, 17. *Calder* v. *Michigan,* 218 U. S. 591, 599. Cf. *Grand Trunk Western Ry.* v. *South Bend,* 227 U. S. 544. That power is plainly distinguishable from the power to cancel for violation of the terms of the grant. In the absence of constitutional, legislative or contractual restriction, the exertion of the first mentioned power requires nothing more than an appropriate declaration of the repeal. *Hamilton Gas Light Co.* v. *Hamilton City,* 146 U. S. 258, 270–271. But, without consent of the holder, valid cancelation for condition broken · cannot be accomplished without giving to the holder an opportunity to have the asserted default judicially determined. *N. Y. Electric Lines* v. *Empire City Subway, supra,* p. 195. *Farnsworth* v. *Minnesota & Pacific R. Co.,* 92 U. S. 49, 66. *Atlantic & Pacific R. Co.* v. *Mingus,* 165 U. S. 413, 430–434. *New York Indians* v. *United States,* 170 U. S. 1, 24.

We need not consider whether the expressly reserved power of repeal is trammeled by Act No. 70 or other law governing the commission or the appeals from its orders, for there is above disclosed enough of the proceedings and determinations of the commission and of the lower courts to show that the order in question was not the exertion of the expressly reserved power to repeal but was the assertion of the implied right to cancel for failure of holders to perform their undertakings. On the appeal the district court was not authorized to substitute for those

of the commission its own views as to what action would be just or ought to be taken, or to perform any legislative, executive or administrative function. Its only jurisdiction was to decide upon the record certified to it by the commission whether the order was (1) reasonable, (2) in conformity with the law, (3) based upon incompetent evidence. "Reasonable" as here employed means not "capricious," "arbitrary" or "confiscatory." Whether the order of cancelation was reasonable in the sense that it did not transgress permissible limits is a question of law. It is not suggested that the other questions presented on the appeal were not within the jurisdiction of the court. The permissible scope of the determinations and judgment of the court is significant. It may only decide the questions of law raised by the appeal and affirm or reverse the order or remand the record to the commission for further action. It is without authority to amend or modify an order of the commission. The jurisdiction and duties of the supreme court and Circuit Court of Appeals are similar in all respects to those of the district court. Neither has any power or function other than what is strictly judicial. It is clear that the Circuit Court of Appeals had jurisdiction of the appeal taken to it. *Pacific Tel. & Tel. Co.* v. *Kuykendall*, 265 U. S. 196, 200. *Radio Comm'n* v. *Nelson Bros. Co.*, 289 U. S. 266. Cf. *Keller* v. *Potomac Elec. Power Co.*, 261 U. S. 428, 444. *Porter* v. *Investors Syndicate*, 286 U. S. 461, 468. *Radio Comm'n* v. *General Electric Co.*, 281 U. S. 464, 469.

3. The second question specified in the petition for the writ is whether the six individuals named as partners, constituting Russell & Company, are parties in interest entitled to appeal from the order. The question as put requires clarification by reference to the facts on which it is based. Havemeyer and the other persons named constitute a limited partnership, Russell & Company. Its answer to the order to show cause is in this form:

"Now comes Russell & Company, Sucrs., S. en C., a civil agricultural partnership organized in accordance with the laws of Puerto Rico, composed of Horace Havemeyer, Frank A. Dillingham, Frank M. Welty, Edwin L. Arnold and H. B. Orde, as partners . . ."

The petition for appeal to the district court begins:

"Now come Horace Havemeyer, Frank A. Dillingham, Edward S. Paine, Edwin L. Arnold, Frank M. Welty and Henry B. Orde, members of the civil agricultural partnership of Puerto Rico, Russell & Co., Sucrs., S. en C., and hereby appeal . . ."

With immaterial variations in the use of words, the designation of appellants last given was followed in the petitions for appeals to the supreme court and the Circuit Court of Appeals. And so in substance were the appealing parties referred to in the opinions, judgments and generally throughout the litigation. Petitioner's point comes to this. The partnership, Russell & Company, composed of the persons named as partners, claiming to be the owner of the irrigation privilege answered the order to show cause; but the appeal from the order of cancelation was taken by these persons as partners constituting the partnership. The commission first raised the point in the Circuit Court of Appeals. If worthy of notice, it should have been made when the appeal was taken to the district court. The appeal is in the nature of a suit to have the order adjudged invalid. The petition for appeal is the complaint. The commission answered on the merits. Thereby it admitted respondents' capacity to initiate the proceeding. *Baltimore & Potomac R. Co.* v. *Fifth Baptist Church,* 137 U. S. 568, 572. *Society for the Propagation* v. *Town of Pawlet,* 4 Pet. 480, 501. *Conard* v. *Atlantic Insurance Co.,* 1 Pet. 386, 450. Havemeyer and the other partners here maintain that, by the proceedings above described, the partnership itself, a juridical entity (*Puerto Rico* v. *Russell & Co.,* 288 U. S. 476, 482)

in legal effect did take all the appeals and was before the Circuit Court of Appeals. It results that the commission's suggestion that the partnership will not be bound by the judgment is without merit. The Circuit Court of Appeals rightly held that the partnership appealed and was before it and that the commission's objection came too late.

4. The facts disclosed by the record support the conclusion of the commission and insular courts that the holder of the irrigation privilege is responsible for the overflow and resulting damages to private and public property. Reasonably construed, the franchise must be held to have given to the grantees control of the outlet and to have bound them to keep it sufficiently clear, for the passage of waters from the lake to the bay, to prevent raising them above the designated levels. The findings of fact included in the report of the commission and decisions of the insular courts, based as we must assume on adequate evidence, indicate that Russell & Company allowed the outlet to become and remain filled up and that the obstruction caused the waters to overflow and keep submerged the large contiguous area that is above referred to. Having regard to the quasi-public nature of the privilege, the extended period of the holder's default, the character of the resulting damages and the commission's authority to terminate for breach of condition on which the grant was made, the order of cancelation is clearly not shown to be capricious, arbitrary or otherwise contrary to law. Russell & Company have failed to establish any ground upon which it may be set aside. *Kern River Co.* v. *United States,* 257 U. S. 147, 155. *Farnsworth* v. *Minnesota & Pacific R. Co., supra,* 68. *Union Land & Stock Co.* v. *United States,* 257 Fed. 635, 637.

*Reversed.*