Russell & Co., Sucrs., Appellee, *v.* Public Service Commission of Puerto Rico et al., Appellants.

No. 9090. Argued March 25, 1946.—Decided June 28, 1946.

*Tomás Torres Pérez* for appellants. *James R. Beverley, R. Castro Fernández,* and *José López Baralt* for appellee.

ON RECONSIDERATION

Mr. Justice Córdova delivered the opinion of the court.

The predecessors of the appellee partnership requested and obtained from appellant, the Public Service Commission, a franchise to use the waters of the Guánica Lagoon for irrigation purposes. Subsequently, the commission ordered the appellee to show cause why the franchise should not be canceled, on the ground that it had violated one of its conditions. The appellee appeared and denied having violated the franchise. After a hearing, the commission found that one of the conditions of the franchise had been violated and issued an order canceling the franchise, which order was appealed and finally affirmed by the courts.[1]

---

[1] *Havemeyer* v. *Public Service Commission,* 45 P.R.R. 677; *Havemeyer* v. *Public Service Commission of Puerto Rico,* 74 F. (2d) 637; *Commission* v. *Havemeyer,* 296 U. S. 506, 80 L. ed. 357.

356

Some years after the litigation hereinbefore set forth ended, the case under consideration was commenced. It was initiated with an informal complaint, filed before the Public Service Commission by the Chief of the Division of Ornithology and Pisciculture of the Department of Agriculture, which in its pertinent part recited as follows:

"Guánica Lagoon, as I understand it, belongs to Russell & Co. which by a ruling of the Supreme Court of the United States must possess a franchise of the Public Service Commission in order to utilize the waters of the said lagoon for irrigation, which I understand it is doing at present without having obtained the corresponding franchise."

Upon this complaint, the commission issued an order to Russell & Co. to show cause why it was "utilizing those waters without having previously obtained a franchise from the Public Service Commission," Russel & Co. appeared and stated: (1) That it was owne rof the waters; (2) that the commission had no jurisdiction to entertain the action, as the waters are not public waters; (3) that it was not true, as set up in the complaint, that the Supreme Court had decided that Russell & Co. must possess a franchise to use the waters.

At the hearing held, the members of the commission asked counsel for Russell & Co. if in the previous proceeding it had been decided whether or not a franchise was required. Counsel answered that that point was not raised and that his answer was that neither then nor now was a franchise necessary to utilize the waters since they belong to the appellee Russell & Co. The appellee introduced evidence to show that the waters belonged to it, and this was the only evidence submitted. The record does not show that the People of Puerto Rico was notified of the hearing, or that it appeared.[2]

[2] In the case of In the Matter of Herminia Colón De Semidey, 59 P.R.R. 247, we distinguished between the Public Service Commission, as an entity with power to grant franchise for the use of public waters, and the People of Puerto Rico, as owner of public waters and therefore an interested party in the grant of franchises. See also Baetjer v. District Court, 56 P.R.R. 570, 58 P.R.R. 426.

The commission held that ". . . assuming for the purpose of this order that the land and the bed or bottom of the Guánica Lagoon belong exclusively to the firm Russell & Co., Sucrs., and that the waters contained in that lagoon are of private ownership, their use, which may require . . . the construction of works, for which it is necessary to divert the natural course of the waters to the injury of third persons, carries with it the legal requisite of the previous obtention of a franchise from the Public Service Commission," and ordered Russell & Co. to refarin from utilizing the waters until it should obtain a franchise.

Russell & Co. appealed to the District Court of San Juan, which entered judgment setting aside the order of the commission, because under the evidence the waters belonged to Russell & Co., and the commission had no power to prohibit the use of the waters by their owner. The commission has taken this appeal from the judgment of the District Court.

In its appeal the commission has stated its case thus (we copy from its brief):

"The District Court of San Juan . . . confined itself to considering two legal points, to wit:

"(1) Who owns the Guánica Lagoon? In other words, is the lagoon private or public property?

"(2) If the lagoon is private property, may the Public Service Commission prohibit the use of the waters by their legitimate owner?

"Both these questions are dealt with in the opinion of the District Court of San Juan.

"We are of the opinion that the decision of the first question, be it as it may, is correct, but not so the decision of the second one.

"We assign as error the following:

"We understand that the District Court of San Juan has decided that the Public Service Commission has no power to prohibit certain uses of private waters, that is, that a lagoon formed by rainfall in a private tenement can be used without restrictions."

On November 27, 1945, we decided the appeal reversing the judgment appealed from, on the ground (1) that in the previous proceeding the public nature of the waters of the

Guánica Lagoon was adjudicated, (2) that the previous adjudication was raised before the commission, and that although this is a defense which is waived if not affirmatively raised, in this case it was not waived.

The appellee, Russell & Co., has requested the reconsideration of our judgment, because (1) we did not decide the question of whether or not the commission had jurisdiction to issue the order it issued, (2) the prior adjudication did not determine that the waters were public waters, (3) the defense of *res judicata* was not raised, nor was evidence introduced to establish it. Although appellant was notified of the motion for reconsideration and of the hearing held thereon, it was not present at the hearing and has filed no opposition.

██ We have serious doubts whether the decision in the previous proceeding adjudicated that the waters of the Guánica Lagoon are public, and even if it did, it is very doubtful that the appellant commission adequately established that affirmative defense, especially in view of the fact that in its appeal to this court it tacitly waived any advantage which the previous adjudication might offer it. It is not necessary, however, that we should decide these two points, since we have reached the conclusion that the judgment appealed from should be affirmed, for whether the waters of the Guánica Lagoon be public or private, the commission has no jurisdiction to determine the nature and extent of the public or private rights to those waters, nor to enjoin anyone from using them. It is true that the jurisdictional question has not been properly raised by the appellee, which has only contended, here and below, that the commission has no jurisdiction because private waters are involved, when the question which was sought to be decided was precisely whether they were private or public, particularly in view of the prior decision. But since the question is jurisdictional, we may and should consider it although it has not been raised.

The jurisdiction of the Public Service Commission, under §§ 38 and 39 of the Organic Act and of the Public Service Act of December 6, 1917, and supplementary laws, may be divided in two fields: the field of the regulation of public services and public service companies, in which the commission is conferred ample power,[3] and that of the grant of franchises and privileges of a public or quasi-public nature.

It is obvious that this case does not involve the regulation of a public service or of a public service company, since the record shows that Russell & Co. is engaged in agriculture and uses the waters of the Guánica Lagoon for the irrigation of its own lands. The intervention of the commission in this case may not therefore be based, nor has the commission attempted to base it, on the power of the commission over public service companies and the public services themselves.

Let us now consider whether the powers of the commission regarding the grant of franchises vest it with sufficient jurisdiction to prohibit the use by any person of public or private waters, without the previous obtention of a franchise. The powers of the commission in this respect flow from § 38 of the Organic Act which in its pertinent part provides ''That all grants of franchises, rights, privileges and concessions of a public or quasi public nature shall be made by a public service commission . . . ,'' and § 52 of the Public Service Act which provides:

''*Grants to be Made.*—The commission shall have power to grant franchises, rights, privileges or concessions for public or quasi-public purposes, including the right to use, or cross roads, highways and public streams; and to grant franchises, rights, privileges or concessions for the use of public waters for public or private purposes; *Provided,* That the commission shall not have the power to grant the title or use of public lands or property, or to grant franchises, rights, privileges or concessions for private purposes, except for the use of public, waters, without the approval of the Legislature.''

---

[3] See *Rivera* v. *Lugo,* 53 P.R.R. 652.

360

There is no doubt that the commission has power to grant franchises for the use of public waters, and in proper cases to amend or revoke them. But the power to grant franchises for the use of public property, which is essentially a legislative function, does not carry with it the power to determine if a person may or may not use property which is considered public without a franchise, which is essentially a judicial function. The Legislature may, for instance, grant a permit to a person for the use of public lands. But if anyone uses lands which are, or which the state considers, public, without a franchise therefor, it is not the Legislature but the courts which must decide the controversy that may arise between the state and that person. Another example of the distinction between the power to grant a franchise or privilege, and that of interfering with those who without holding a franchise purport to act is if they had one, is offered by the franchise or privilege of tax exemption for new industries. The Legislature has vested the commission with power to grant such franchises.[4] But if any industry, without having such a franchise, persists in not paying taxes, it is obvious that the commission would not have jurisdiction to compel it to pay, or to intervene in the matter in any way. Although, we do not attempt to say that the above examples are precisely analogous to the present case, we have used them simply to illustrate the proposition, which seems evident, that the power of the commission to grant franchises for the use of public waters does not carry with it, in the absence of other legislative provisions that expressly or tacitly confer upon it such power, that of entertaining controversies regarding the right to use waters without a franchise. It remains to be considered, therefore, if there are any legislative provisions which grant the commission jurisdiction over public or private waters beyond the field of granting, amending or repealing franchises.

---

[4] See Act No. 94 of May 14, 1936 (Laws of 1936, p. 494.)

The commission, in the answer [5] it filed in the District Court of San Juan in reply to the notice of appeal of Russell & Co., insists in that it has ample power over public and private waters, under the Law of Waters of February 5, 1886, as amended by Act of March 12, 1903.

The Law of Waters deals with the ownership of terrestrial waters, and of their beds and banks, with the construction of private protective works in public channels, with drainage of public and private lagoons and marshes, with servitudes in regard to waters and banks, with common special uses of public waters, with policing of the waters, and with the jurisdiction of courts in the matter of waters. Originally, it was incumbent upon the Overseas Ministry of Spain to grant certain uses of public waters and certain permits for the construction of private works in public channels, to regulate the drainage of private lakes and marshes, to review the decisions of the Governor imposing compulsory aqueduct servitudes, to have charge of the policing of public waters and their natural beds, banks, and servitude zones, to issue regulations for the execution of the Act, and to carry out the survey and demarcation of all that belongs to the public in accordance with the Act "without prejudice to the jurisdiction of the courts with regard to questions of ownership and possession." [6] Other powers were vested in the Governor and others in municipal officers. The Act of March 12, 1903, provided that all the rights, powers, and duties conferred upon the Overseas Minister were transferred to the Executive Council, and those conferred upon the Governor to the Commissioner of the Interior.

The commission contends that all the powers appertaining to the Overseas Minister and that were transferred to the Executive Council in 1903, pertain now to the commission by virtue of § 38 of the Organic Act and § 52 of

---

[5] Section 82 of the Public Service Act requires that the Commission file an answer to the notice of appeal.

[6] Section 248 of the Law of Waters, Comp. Stat. 1911, p. 492.

the Public Service Act. Section 38 of the Organic Act, in addition to the general power to grant franchises which we have already discussed, only transferred to the commission those functions of the Executive Council "relating to public service corporations." And § 52 of the Public Service Act, already copied, only conferred to the commission power to grant franchises for the use of public waters for public or private purposes. There is no basis, therefore, for the contention of the commission that it derives from the Law of Water powers additional to those expressly vested upon it by the Organic Act and the Public Service Act regarding public or private waters. And as we have already seen, the powers that the Organic Act and the Public Service Act confer on the commission are limited to the granting, amending, and revocation of franchises for the use of public waters.

 But there is more. The Law of Waters itself, which the commission invokes, shows that the case at bar should be considered by the courts of justice and not by administrative bodies or tribunals. Section 254 of the Law of Waters reads as follows:

"Courts exercising civil jurisdiction shall be competent in matters relating to:

"1. The ownership of public waters and the ownership of private waters and their possession.

"2. The ownership of the shores, channels or beds of rivers, and the ownership and possession of their banks, without prejudice to the jurisdiction of the administration in the matter of surveying, determining, and fixing the bounds of public property.

"3. Servitudes of waters and rights of way along margins, based on titles of civil law.

"4. The right to fish."

Section 150 of that same Act provides the following:

"Every grant for the use of public waters shall be understood to be made without prejudice to third persons, and reserving individual rights; as to the duration of these concessions, it shall be determined in each case according to the provisions of this law."

And, as we have seen, § 248 of the Act, which imposes upon the Overseas Minister (now the Executive Council), the duty of carrying out the survey and demarcation of all that belongs to public ownership under the law, provides that the determination so made regarding what belongs to the public shall be without prejudice to the jurisdiction of the courts with regard to questions of ownership and possession.

The three Sections to which we have referred, and which are in force, clearly show that the determination of the public or private nature of the waters is a matter for the courts and not for the body which grants franchises for the use of public waters, formerly the Overseas Ministry and now the Public Service Commission. As expressly provided by § 150, although the expression was hardly necessary, the grant of a franchise is without prejudice to private rights. And as set forth by § 254, and also ratified by § 248, the decision of questions relative to the ownership and possession of public and private waters is a matter for the civil courts, and not for administrative tribunals.

We therefore conclude that the Public Service Commission had no jurisdiction to entertain the question which it sought to raise through the order to show cause issued at the commencement of this case, to wit, the right of Russell & Co. to use the waters of the Guánica Lagoon, that is, the question regarding the nature and extent of the public or private rights to said waters.

The opinion and judgment of this court of November 27, 1945, should be set aside, and another rendered instead affirming the judgment appealed from.