**CIVIL AERONAUTICS BOARD et al. v. MODERN AIR TRANSPORT, Inc.**

United States District Court
S. D. New York.
Jan. 13, 1949.

John F. X. McGohey, U. S. Atty., and David M. McKibbin, Asst. U. S. Atty., both of New York City, Edward Dumbauld and Wm. D. McFarlane, Sp. Assts. to Atty. Gen., and Oliver Carter, Acting Chief, Enforcement & Litigation Section, Civil Aeronautics Board, and Dent D. Dalby, Chief, Enforcement & Litigation Division, Civil Aeronautics Administration, both of Washington, D. C., (Emory T. Nunneley, Jr., Gen. Counsel, and John H. Wanner, Asst. Gen. Counsel, Civil Aeronautics Board, both of Washington, D. C., and S. W. Bobskill, Regional Atty., Civil Aeronautics Administration, of New York City, of counsel), for plaintiffs.

Morris A. Schoenfeld, of New York City, and Charles S. Rhyne and Eugene J. Bradley, both of Washington, D. C., for defendant.

COXE, Chief Judge.

This is a motion by the plaintiffs for a preliminary injunction in an action for injunctive relief restraining the defendant from engaging in air transportation in violation of Section 401(a) of the Civil Aeronautics Act of 1938, as amended, 49 U.S.C.A. § 481(a).

The defendant is an air carrier as defined in the Act, and on August 19, 1947 there was issued to it a Letter of Registration as an Irregular Air Carrier under Section 292.1 of the Economic Regulations of the Board. The defendant holds no other authority from the Board to engage in air transportation. The complaint alleges that since September 13, 1947 the "defendant has operated, and held out to the public * * * that it operated frequent and regular flights of aircraft in air transportation * * * between the point New York, N. Y. (airports Newark, N. J. and Teterboro, N. J.) and the point San Juan, Puerto Rico", and that "such flights of aircraft have exceeded in frequency and regularity those operations permitted under Section 292.1 of the Board's Economic Regulations".

The pertinent sections of the Act are Sections 1007(a), 401(a) and 416(b) (1), 49 U.S.C.A. §§ 647(a), 481(a) and 496(b) (1). Section 1007(a) provides that "If any person violates any provision of this chapter * * * the Board * * * may apply to the district court of the United States, * * * for the enforcement of such provision * * *; and such court shall have jurisdiction to enforce obedience thereto by a writ of injunction * * *." Section 401(a) provides that no air carrier shall engage in air transportation unless there is in force a certificate of public

convenience and necessity issued by the Board, authorizing it to engage in such air transportation. By Section 416(b) (1) the Board was, however, given authority under certain circumstances to exempt any air carrier or class of air carriers from most of the economic provisions of the Act.

Under the authority of Section 416(b) (1) the Board issued a revision of Section 292.1 of its Economic Regulations, effective June 10, 1947, reading in part as follows: "(b) Classification.—There is hereby established a classification of non-certificated air carriers to be designated as 'Irregular Air Carriers'. An Irregular Air Carrier shall be defined to mean any air carrier (1) which does not hold a certificate of public convenience and necessity under section 401 of the Civil Aeronautics Act of 1938, as amended, (2) which directly engages in interstate or overseas air transportation of persons and property or foreign air transportation of property only, and (3) which does not hold out to the* public, expressly or by a course of conduct, that it operates one or more aircraft between designated points, or within a designated point, regularly or with a reasonable degree of regularity upon which air craft it accepts for transportation, for compensation or hire, such members of the public as apply therefor or such property as the public offers. No air carrier shall be deemed to be an Irregular Air Carrier unless the air transportation services offered and performed by it are of such infrequency as to preclude an implication of a uniform pattern or normal consistency of operation between, or within, such designated points."

This section further provides that Irregular Air Carriers shall be exempt from all of the economic provisions of the Act other than those specifically enumerated, and Section 401(a) is not among those so enumerated. It also provides that Letters of Registration shall (1) "be subject to immediate suspension, when, in the opinion of the Board, such action is required in the public interest", and (2) "be subject to revocation, after notice and hearing, for knowing and wilful violation of any provision" of the Act.

The affidavits submitted by the plaintiffs in support of the motion show that during the period from April 1, 1948 to September 13, 1948, the defendant operated flights regularly between the point New York, N. Y. (airports Newark, N. J. and Teterboro, N. J.) and the point San Juan, Puerto Rico, three or four times each week on Monday, Wednesday, Friday and Saturday. These facts are not in dispute and were obtained from the quarterly operational report of the defendant filed with the Board for the quarter ending June 30, 1948, and from an examination of the defendant's subsequent records. A graphic analysis of the flights appears in a schedule attached to the moving affidavits. Clearly, such regularity and frequency of operations would bar the defendant from being classified as an Irregular Air Carrier, and would require it to have a certificate of public convenience and necessity.

It is the position of the plaintiffs that the exemption from Section 401(a), created by Section 292.1 of the Regulations, applies only if the operations of defendant are in fact irregular, and that, if they are not, the defendant has automatically violated Section 401(a); in other words, they insist that the exemption from Section 401(a) is merely a limited exemption, applicable only so long as defendant operates within the bounds of its letter of registration.

The defendant, on the other hand, contends that its exemption is absolute and complete so long as it continues to be classified as an Irregular Air Carrier, even though its operations may not in fact be irregular. It insists also that, although it may be operating a regular scheduled service in violation of its letter of registration, the court is powerless to act, at least until the Board has exhausted its administrative remedies to suspend or revoke the letter of registration.

I think that these contentions of the defendant are untenable. Although Section 292.1 of the Regulations, as it now reads, does not specifically provide that the exemption from Section 401(a) shall be applicable only so long as the air carrier engages in irregular operations, it is clear that this was the intention. In its explanatory statement in the draft of the proposed revision of the section, issued on November 22, 1946, the Board stated: "Of particular impor-

tance is the requirement that such carriers are exempted by this regulation only, if they do not provide or offer regular or reasonably regular air transportation between designated points. In other words, in order for these carriers to obtain the benefit of these exemptions, their air transportation must be of such irregular character as to avoid the establishment or offering of a reasonably consistent pattern of operations between any two points."

And in the introductory portion of the section itself, as finally adopted on May 5, 1947, the Board referred to the fact that since 1938 there had been in effect "an exemption regulation adopted by the Board which exempts non-certificated air carriers * * * so long as they engage only in irregular services as defined in such regulation".

It would, in any event, be a most unreasonable construction of the section to hold that the exemption must continue, even though the defendant is engaging in such regular operations as to require it to have a certificate of public convenience and necessity. It must be held, therefore, that an air carrier is exempted from Section 401(a) only so long as its operations are irregular in character.

The contention of the defendant that the Board must exhaust its administrative remedies before resorting to the courts is equally unsound. No administrative agency can, by providing a particular remedy for a violation of one of its own regulations, thereby eliminate or destroy an existing statutory remedy; its own remedy may supplement the statutory remedy, but it cannot supplant it. It will not be presumed, unless the contrary clearly appears, that Congress, by creating a regulatory agency and empowering it to adopt regulations for enforcing the Act, intended to confer upon the agency power to prescribe remedies which should be exclusive of existing remedies, whether statutory or common law. The rule is that even when a statute itself creates a right and prescribes a particular remedy for its enforcement, that remedy will not be exclusive of all other remedies, unless it is clear that Congress so intended. See United States v.

Stevenson, 215 U.S. 190, 197, 30 S.Ct. 35, 54 L.Ed. 153.

Section 1007(a) is in very much the same language as Section 222(b) of the Motor Carrier Act of 1935, 49 U.S.C.A. § 322(b). In Interstate Commerce Comm. v. Fordham Bus Corp., D.C.S.D.N.Y., 38 F.Supp. 739, 740, it was held that the latter section "affords full authority for the Commission to institute suit and for this court to exercise jurisdiction." This language applies equally to Section 1007(a).

The principle of exhaustion of administrative remedies applies only to private parties who have the right to resort to an administrative tribunal for relief, and who must exhaust their administrative remedy before resorting to the courts. This principle can have no application to a governmental agency in the enforcement of its rights; in such cases it may resort to any or all available remedies. Flying Tiger Line v. Atchison, T. & S. F. Ry. Co., D.C.S.D.Cal., 75 F.Supp. 188, 195.

The argument of the defendant that the language of Section 292.1 of the Regulations is so vague and indefinite that only the Board is competent to determine whether the operations of the defendant are regular or irregular requires little comment. It is true that this language is general, but it certainly is not vague and indefinite, and I can see no possible escape from holding that the operations of the defendant, as already recited, are within the language. Section 1007(a) would have no meaning or application whatever if this court is without power to determine whether the defendant is an Irregular Air Carrier and entitled to exemption from Section 401(a). Hawaiian Airlines v. Trans Pacific Air Lines, D.C.Hawaii, 73 F.Supp. 68.

The remaining contentions pressed by the defendant may be disposed of briefly. It is not necessary for the plaintiffs to show irreparable injury to entitle them to an injunction, for the right to an injunction is specifically conferred by the statute. Interstate Commerce Com'n v. All American Bus Lines, D.C.S.D.N.Y., 22 F.Supp. 525. See also United States v. Trans Missouri Freight Ass'n, 166 U.S. 290, 342–

343, 17 S.Ct. 540, 41 L.Ed. 1007. Nor are the particular flights involved in the present action without the jurisdiction of the Board.

The motion of the plaintiffs for a preliminary injunction is granted.