## TRANS–PACIFIC AIRLINES, Limited, v. HAWAIIAN AIRLINES, LIMITED.

### No. 11865.

United States Court of Appeals Ninth Circuit.

March 18, 1949.

Rehearing Denied May 4, 1949.

See also 8 F.R.D. 449.

Sai Chow Doo, of Honolulu, T. H., Frederick L. Hewitt, of San Francisco, Cal., and Coates Lear, of Washington, D. C. (Blair & Blair, of Washington, D. C., and Fong, Miko & Choy, of Honolulu, T. H., of counsel), for appellant.

J. Garner Anthony and William F. Quinn, both of Honolulu, T. H. (Robertson, Castle & Anthony, of Honolulu, T. H., of counsel), for appellee.

Edward Dumbauld and William D. McFarlane, Sp. Assts. to the Atty. Gen., Emory T. Nunneley, Jr., Gen. Counsel, Civil Aeronautics Board, of Washington, D. C., Herbert A. Bergson, Asst. Atty. Gen., Frank J. Hennessy, U. S. Atty., of San Francisco, Cal., and John H. Wanner, Asst. Gen. Counsel, Oliver Carter, Acting Chief Enforcement & Litigation Section, Robert Burstein and Gilbert E. Andrews, Attys., Civil Aeronautics Board, all of Washington, D. C., for Civil Aeronautics Board as amicus curiae.

Before MATHEWS and ORR, Circuit Judges, and FEE, District Judge.

JAMES ALGER FEE, District Judge.

Hawaiian Airlines, Limited, appellee, brought action in the district court against Trans-Pacific Airlines, Limited, to enjoin it from operating as a scheduled air carrier engaged in air transportation in violation of Section 401 of the Civil Aeronautics Act of 1938, as amended, 49 U.S. C.A. § 481. An order to show cause was issued and Trans-Pacific appeared and objected that the court had no power to proceed, since primary jurisdiction was vested in the Civil Aeronautics Board.

The District Court of Hawaii nevertheless held a hearing. In response to an order to show cause, Trans-Pacific made showing that it was registered by the Civil Aeronautics Board as an irregular carrier and therefore claimed exemption from the provisions of § 401(a). The issuance of a certificate of registration to Trans-Pacific as a non-certificated, irregular air carrier by the Board under Economic Regulations Section 292.1, is agreed by all parties.

The court eventually issued an injunction of a permanent character restraining Trans-Pacific from engaging in air transportation in violation of Section 401(a) of the Civil Aeronautics Act. 49 U.S.C.A. § 481.

The Trans-Pacific insisted upon its jurisdictional objection all through the hearing, and raises this question solely upon appeal. It follows this court cannot consider any of the evidence received with the exception of the admitted fact of the issuance of the certificate of registration. It must then be determined whether an air carrier, admittedly a party in interest, can, by bringing a complaint for injunction against violations alleged as to Section 401(a), establish the jurisdiction of the district court, where the Civil Aeronautics Board has accepted registration of the air carrier against which relief is sought under the Act.

The subsidiary question which is vital is: After the assumption of control over an air carrier under the Act by issuance of certificate of registration, does not the Board have exclusive jurisdiction to determine all facts and questions in relation thereto before a private party in interest, also subject to the control of the Board, may seek relief in court?

It was there and still is here incumbent upon the appellee to establish the jurisdiction of the United States District Court of the District of Hawaii.

Hawaiian had the right to bring an action as a party interested,[1] to enjoin an air carrier from engaging in air transportation, unless there was in force a certificate issued by the Board authorizing the operation.[2] It is agreed the Board had not issued a certificate as contemplated by this section of the law. By an entirely independent section of the statute the Board was permitted to exempt "any air carrier or class of air carriers" "from the requirements of this title or any provision thereof." [3]

If an exemption was granted to Trans-Pacific by the Board under the section of the statute last referred to from the necessity imposed by § 401(a) of having a certificate to engage in air transportation, then Hawaiian would have no authority to maintain suit.

There is no question that the Board had granted, by issuance of the letter of registration to Trans-Pacific exemption from certain requirements of the statute as specified by the Economic Regulations adopted by the Board. Here, then, is the crux of the problem. It is strenuously urged by appellee that the court is required to issue an injunction which would compel Trans-Pacific to respect all limitations on the exemption, as these may be construed by the Board. Indeed, this is the net effect of the injunction actually issued by the district court. Such action would simply place the seal of judicial decree upon future action and interpretation by the Board.

[1] § 1007(a), 52 Stat. 1025, 49 U.S.C.A. § 647(a).

[2] § 401(a), 52 Stat. 987, 49 U.S.C.A. § 481(a).

[3] § 416(b) (1), 52 Stat. 1004, 49 U.S. C.A. § 496(b) (1).

The Board, by permission, as a friend of the court has filed a brief in which it is sought to strengthen the position of the appellee. In other cases, also, the Board has attempted to have the courts settle questions which were primarily within the aura of responsibility committed to it. See American Airlines, Inc., v. Standard Airlines, D. C., 80 F.Supp. 135, and Civil Aeronautics Board v. Modern Air Transport, Inc., D.C., S.D.N.Y., 81 F.Supp. 803. This case does not present conflicting jurisdictions of separate administrative bodies where courts may be required to erect markers upon the boundaries. Levinson v. Spector Motor Service, 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158. These contentions of the Board seem to point to a recession of the tide of administrative control which once threatened to cover grounds traditionally under the judicial process. If courts were as grasping of power as has sometimes been indicated, the jurisdiction forced upon the district court might here be accepted. But in view of the widespread discussion of the functions of the administrative process, it may be assumed that Congress intended the administrative body, to proceed to help the courts by making determination and thus give color and life to policy embedded in the text of the Act, before abandoning such controversies to the courts for final settlement on cold, legalistic lines.

Before it can be assumed that a court should construe the nature and limitations of the exemption extended by the Board to Trans-Pacific, the character of the process must be analyzed. It is immediately discovered that any consideration of the scope of the exemption required a detailed examination of the economic situation of Trans-Pacific and of the public policy involved.

The Board is given power to issue a certificate of public necessity and convenience, which will give a carrier a right to engage in air transportation, § 401(a). The Board is given power to exempt from the requirement of this title or any provision thereof or any rule, regulation, term, condition or limitation prescribed thereunder, any air carrier or class of air carriers. The exercise of this latter power is conditioned upon a finding by the Board "that the enforcement of this title" or "such provision, or such rule, regulation, term, condition, or limitation is or would be an undue burden on such air carrier or class of air carriers." Not only that, but the Board must find this "undue burden" occurs "by reason of the limited extent of, or unusual circumstances affecting, the operations of such air carrier or class of air carriers and is not in the public interest." § 416(b) (1).

In the light of these statutory provisions the function of the Board was legislative or administrative. The Board, whether it dealt with a single air carrier or a class of air carriers, was concerned with the economic condition thereof and practices and activities in the future. No exemption could be granted, limited, or complete, without performance of this condition precedent. The rules or economic regulations of the Board are not static.[4] Common observation will suggest that the economic situation of an air carrier or class of air carriers will be mutable. It is for the Board to adjust these relations under the complicated formula of the statute. Experience in cases arising under the rules for exemptions will clarify the needs. The practices developed by the economic dynamics will guide the administrative body in the promulgation of regulations. Thus the day by day happenings will mold the statute under administrative guidance into an efficient instrument. This very enactment gives ample opportunity for judicial review of the acts of the Board, if it proceed arbitrarily or capriciously. § 1006, 49 U.S.C.A. § 646. In the nature of things the jurisdiction of the Board to make such determinations must be exclusive.

It is then demonstrable that these particular operations of the Board are of the ad-

---

[4] The trial court clearly understood the fluidity of the regulation for the grant of the injunction was subject to modification, "in the event the C.A.B. shall hereafter modify or rescind the aforesaid regulations or its interpretation placed thereon by said agency." And again, it is said defendant (appellant) will be enjoined, "reserving the right to the defendant to increase its operation to the extent that the C.A.B. changes its mind from time to time * * *."

ministrative function. But if "the character of the controverted question and the nature of the enquiry necessary for its solution" be made patent the result is the same. The Board has adopted Economic Regulations which purport to give exemption to certain air carriers. If mere textual criticism were involved the problem would be a juridical one. But "technical words and phrases not commonly understood are employed." In the light of the statute an attempt to shoulder on the courts the explanation of phrases dealing with the usages of this new industry[5] or the solution of the complex and unique factual problems incident to air transportation in its present period of development would be an effort to confer legislative power on the court.[6]

There is no question then whether the court or the judges have the ability to construe the Economic Regulations and apply them. The only question is whether it was the intention to commit these questions to the courts in the first instance.

▉▉▉ Where the application of the administrative regulations is clear and no special familiarity with the complicated factual situations peculiar to the field is imposed, and no determination of direction is required, the courts will proceed. Great Northern Railway Company v. Merchants Elevator Company, 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943. On the other hand, prior to judicial intervention, problems which involve expert knowledge of multitudinous detail of intricate nature in a technical field require that recourse should be had to administrative bodies. Especially is this true where uniformity of interpretation of rules and consistency in application, in view of an overall policy, is compelled by the legislative mandate.

Then is there not only a commitment of primary, but likewise of exclusive, jurisdiction to the administrative, and exhaustion of the remedies is mandatory. Texas & Pacific Railway Company v. American Tie & Timber Company, 234 U.S. 138, 34 S.Ct. 885, 58 L.Ed. 1255.

The function of the Board did not end here with the promulgation of the Economic Regulations. Power to terminate suspend or revoke the certificate of registration was reserved by the Board[7] upon appropriate precedent finding, or hearing. Economic Regulations 292.1(d) (2), (d) (4) and (d) (5), 12 Fed.Reg. 3078. The process will not end until the Board by action in the particular case has allocated to it by a consideration of its economic situation a position in a striking pattern formed by inclusions and exclusions from grants of exemptions. Elements arising in the future may require amendments to the Economic Regulations and Trans-Pacific may be in an exceptional situation. The courts should not interfere with this formulative process, for the natural administrative lines might be distorted and the purpose of the Act in creating an administrative agency frustrated.

▉▉▉ The district court had no jurisdiction to attempt to settle the economic status of Trans-Pacific with regard to air transportation. The Board had granted to this carrier an exemption from the requirement for a certificate, set up in 401(a). As long as this exemption existed, Trans-Pacific was under the jurisdiction of the Board, and the district court had no power to interfere. The District Court of Hawaii therefore had no jurisdiction to proceed, but should have held the cause in abeyance until the Board made a primary determina-

---

[5] "The case before the Commission did not, as contended, involve merely the construction of the written words employed in a rate tariff—a simple question of law; but required consideration of matters of fact and the application of expert knowledge for the ascertainment of the technical meaning of the words and a correct appreciation of a variety of incidents affecting their use." Standard. Oil Co. (Indiana) v. United States, 283 U.S. 235, 238, 239, 51 S.Ct. 429, 430, 75 L.Ed. 999.

[6] See, Federal Radio Comm. v. General Electric Co., 281 U.S. 464, 50 S.Ct. 389, 74 L.Ed. 969; Public Service Comm. v. Havemeyer, 296 U.S. 506, 56 S.Ct. 360, 80 L.Ed. 357.

[7] Cf. Natural Gas Pipeline Co. of America v. Slattery, 302 U.S. 300, 311, 58 S.Ct. 199, 204, 82 L.Ed. 276. "Here the commission had authority to pass upon every question raised by the appellant and was able to modify the order."

tion or failing that, within a reasonable time might have dismissed the suit.[8]

The judgment appealed from is reversed, and the case, is remanded to the District Court for further proceedings in conformity with this opinion.

---

[8] 42 Am.Jur. p. 702, Public Administrative Law § 254.