THE PEOPLE OF PUERTO RICO, ETC., Plaintiff and Appellee *v.* "EASTERN SUGAR ASSOCIATES, a TRUST," ET AL., Defendants and Appellants.

No. 10286.   Argued February 1, 1951.—Decided May 29, 1951.

---

*E. T. Fiddler, José G. González, Tomás I. Nido,* and *Fernando Fornaris, Jr.,* for appellants. *Víctor Gutiérrez Franqui, Attorney General, (Vicente Géigel Polanco, Former Attorney General,* on the brief), and *Carlos J. Faure,* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the Court.

This is a suit by the People of Puerto Rico against Eastern Sugar Associates for the collection of money. Pursuant to Act No. 221, Laws of Puerto Rico, 1942, known as the "Act Regulating the Sugar Industry of Puerto Rico", the defendant applied for and obtained franchises authorizing it to operate four sugar mills to grind sugar cane owned by it and independent colonos. Each franchise provided in Section six that for the exercise thereof a specific sum shall be paid annually on March 15 of each year to the Treasurer of Puerto Rico.[1] During the years from 1943 to 1947 the defendant operated its mills but failed to pay any of these sums to the Treasurer. The People thereupon instituted this suit in the district court for the collection of money. After a trial on the merits, the lower court entered a judgment in favor of The People in the amount of $12,000 with interest and costs. The case is here on appeal from that judgment.

The appellant assigns thirty-two errors. However, it groups these errors into six points of argument: (1) no contract in the nature of a franchise or concession exists between the appellant and the People obligating the appellant to pay the amounts demanded in this action; (2) the franchises are licenses to continue to conduct a legitimate business subject only to reasonable regulation under the

---

[1] These sums were $300, $600, $700, and $800 per year, respectively, for the four mills.

police power; (3) the People, under the pretense of exercising the police power, had no authority to exact royalties or a license fee as a condition for enjoying the constitutional right of the appellant to engage in business, either under the terms of a franchise or a license; (4) the authority conferred by the Legislature on the Public Service Commission to determine royalties or license fees to be charged to the appellant was an unconstitutional delegation of its legislative powers; (5) the Commission did not observe the requirements of due process of law in fixing the royalties or license fees; (6) the appellant is not estopped from defending this suit.

■ We find it unnecessary to consider these arguments of the appellant. When it filed its application for these franchises, the appellant made the following statement: "In filing this Petition, Petitioners do not admit the validity of said Act No. 221 but assert its invalidity and file this Petition under protest and duress, and solely to avoid the penalties, criminal and civil, and losses to which they would be subject by reason of said Act if they failed to apply for a franchise as provided therein; and do not waive any of their rights but do hereby expressly reserve all of the same, including expressly their right to contest the validity and constitutionality of said Act and of any provision thereof, and of any order, rule, regulation, or act issued or done under said act." In accepting the franchises by letter of February 23, 1944, it made a similar statement.[2] The defendant there-

[2] Its letter of February 23, 1944 reads in part as follows: "Since under Law No. 221 of 1942, the Public Service Commission only has the power to grant one franchise or concession to a sugar company as therein defined, to operate its business, and since our four mills constitute one integrated enterprise and, therefore, involve only one sugar company as defined in said law, we assume, consider and construe the said four franchises as one single franchise or concession for the operation of our four mills as an integrated enterprise. Insofar as the concession of the said franchises may be considered as a certificate to us that we may continue to operate our business of processing sugar cane without being subject to the penal provisions of Law No. 221 of May 12, 1942, we accept the concession thereof. However, in view of the fact that we did

upon proceeded to do business under these franchises. The insular authorities made no effort to prevent the defendant from grinding its own cane and the cane of independent colonos, despite the reservations in the quoted statements of the defendant. The government therefore in effect treated the letter of February 23, 1944 as a valid acceptance of the franchises as provided in § 11 thereof.[3]

The statements by the defendant that it was reserving its rights to obtain a judicial determination of the validity of the provisions of the franchises were superfluous. They were entitled to take this action even if they had not made such reservations. This was made plain both by this Court in *People* v. *A. Roig, Sucrs.*, 63 P.R.R. 17, 35–36, and by the Court of Appeals in affirming the judgment in that case in *Roig* v. *People of Puerto Rico*, 147 F. 2d 87, 92 (C. A. 1, 1945). To the same effect, *W. W. Cargill Co.* v. *Minnesota*, 180 U. S. 452, 468.

However, the defendant did not undertake to attack any of the terms of its franchises in the manner provided

---

not voluntarily request the said concession and that no benefits are conferred upon us under the terms thereof, we do not concede that we are subject to the conditions contained in Sections 3 to 10 inclusive of said franchises in so far as said conditions are concerned, we will only consider ourselves bound thereby in case a court of competent jurisdiction shall have finally determined that we are subject thereto, in a proceeding' in which the question shall have been properly raised. Moreover, because of the threat and in fear of the penalties of said Law No. 221, we accept the said franchise or concession under duress and reserve the right to obtain a judicial determination of the power of the Public Service Commission to exact such franchise and of the legality and validity of the conditions or any of the conditions thereof, and of any future conditions which may be imposed upon us under these franchises or otherwise. In thus accepting under duress the above mentioned permanent concession, we do not in any way admit the validity of said Law No. 221 of May 12, 1942 but on the contrary assert its invalidity and hereby expressly reserve the right to contest the validity and constitutionality of said Law and of any of its provisions and of any order, rule, regulation, decision, or any act done under said.Law."

[3] Section 11 provides for acceptance of the franchise within thirty days of its issuance and that "if said written acceptance shall not be filed within the said period, this franchise ordinance shall become null, void, and of no effect."

by law. On the contrary, it simply folded its arms and ignored the franchises, at least insofar as they obligated it to pay the Treasurer the specified sums per year. In this suit for collection of money the defendant for the first time assails the validity of the franchises, and complains of the alleged lack of a hearing in connection with fixing the royalties provided in the franchises and of the amounts thereof. But these matters are not properly before us. The defendant was entitled to raise them by filing in the district court, pursuant to § § 78–90 of Act No. 70, Laws of Puerto Rico, 1917, Vol. II, and § § 50 and 51 of Act No. 221, a petition for review of the decision or order of the Commission granting the franchise and providing for its terms. *Godreau & Co.* v. *Public Service Comm'n*, 71 P.R.R. 608; *Commission* v. *Havemeyer*, 296 U., S. 506; *South Porto Rico Sugar Co.* v. *Distirct Court*, 62 P.R.R. 811; *Quilinchini et al.* v. *Public Service Commission of Puerto Rico et als.*, per curiam, decided June 13, 1945; *In the Matter of Herminia Colón de Semidey*, 59 P.R.R. 247; *Baetjer* v. *District Court*, 58 P.R.R. 426; *Fleming* v. *Public Service Commission*, 57 P.R.R. 1; *Baetjer* v. *Court*, 56 P.R.R. 570; *Municipality* v. *Public Service Comm.*, 51 P.R.R. 362; *White Star Bus Line* v. *District Court*, 52 P.R.R. 809. See *White Star Bus Line* v. *People of Puerto Rico*, 75 F. 2d 889, 893, second column (C. A. 1, 1935). *Cf. Russell & Co.* v. *Public Service Commission*, 66 P.R.R. 355. It elected not to do so. After operating for more than eight years under these franchises, it cannot now raise as a defense to a suit by the People for collection of money questions as to their validity, the procedure used to fix them, and the amounts thereof. It was entitled to file at the appropriate time a proceeding in the district court for review of the provisions of the franchise to determine if they were "reasonable and in conformity with law", § 83 of Act No. 70; *Commission* v. *Havemeyer, supra; Godreau & Co.,* v. *Public Service Comm'n,*

*supra.* See *Montana-Dakota Utilities Co.* v. *Northwestern Public Service Company,* 341 U. S. 246. Having failed to take this action, the defendant waived the contentions it now raises in defense of this suit for collection of money.

This case is unlike the *Roig* case, where the defendant refused to apply for a franchise and the People brought suit to enjoin it from operating without a franchise. Under those circumstances, Roig was entitled within the injunction suit to assail the constitutionality of Act No. 221 as applied to it. But here as we have seen the defendant applied for and obtained its franchises. It was therefore required to utilize the statutory method provided for review of any provisions of the franchise which it desired to challenge.[4]

The judgment of the district court will be affirmed.

Mr. Justice Negrón Fernández took no part in the decision of this case.

---

[4] For the distinction between a license and franchise, see *Frost* v. *Corporation Commission,* 278 U. S. 515, 519–521; *M'Phee & M'Ginnity Co.* v. *Union Pac. R. Co.,* 158 Fed. 5, 10–11 (C.A. 8, 1907); *New State Ice Co.* v. *Liebmann,* 285 U. S. 262; *Madden* v. *Queens County Jockey Club,* 72 N. E. 2d 697 (N. Y., 1947); *Owensboro* v. *Cumberland Telephone Co.,* 230 U. S. 58.

As to whether a franchise to operate as a public utility, as distinguished from a license, is required by Act No. 221 where as here a mill serves the public by grinding not only its own cane but also the cane of independent colonos, see *Godreau & Co.* v. *Public Service Comm'n,* 71 P.R.R. 608; *Compañía Azucarera del Toa* v. *Public Service Commission of Puerto Rico,* 71 P.R.R. 197.

As to the constitutionality of requiring a franchise to operate a sugar mill to grind the cane of independent colonos, see *People* v. *A. Roig, Sucrs.,* 63 P.R.R. 17; *California Auto. Ass'n* v. *Maloney,* 341 U. S. 105, and the same case in the lower court, 216 P. 2d 882 (Calif., 1950); *Secretary of Agri.* v. *Cent. Roig Co.,* 338 U. S. 604, 614 *et seq.; Frost* v. *Corporation Commission, supra; New State Ice Co.* v. *Liebmann, supra; Munn* v. *Illinois,* 94 U. S. 113. Cf. *Davies Warehouse Co.* v. *Bowles,* 321 U. S. 144, and the dissenting opinion in the same case in the court below in 137 F. 2d 201, 209 (Emerg. C. A., 1943); *United States* v. *Champlin Co.,* 341 U. S. 290.