GODREAU, GODREAU & CO., ET AL., Plaintiffs and Appellants, v. PUERTO RICO PUBLIC SERVICE COMMISSION, Defendant and Appellee.

No. 9933. Argued February 1, 1950.—Decided June 23, 1950.

*José G. González* and *E. T. Fiddler* for appellants. *Vicente Géigel Polanco, Attorney General,* and *A. Torres Braschi,* for appellee. *Jaime Sifre, Jr.,* as *amicus curiae.*

MR. JUSTICE SNYDER delivered the opinion of the Court.

The Public Service Commission entered an order adopting so-called General Regulations for sugar companies pursuant to Act No. 221, Laws of Puerto Rico, 1942. This is an appeal by the above-entitled companies from a judgment of the Tribunal of the District of San Juan affirming the order.

■■ The first contention of the appellants is that the Regulations are invalid because the Commission adopted them "without showing that it has acted within the limitations established by the Legislature", and "without making any findings or determination of fact from which an appellate court can determine whether or not it acted within the authority conferred" by Act No. 221.

We think it appropriate to note first the difference between the procedure provided by law for establishing general regulations for public utilities as contrasted with the

procedure pursuant to which the Commission issues and the courts review decisions and orders in cases affecting individual utilities.

Under § 38 of Act No. 221 the Commission is empowered to make "such rules and regulations not inconsistent with the law as may be necessary or proper in the exercise of its powers or for the performance of its duties . . . ". By virtue of § 19 of Act No. 221, the Commission, in regulating sugar companies, also has the powers and duties provided in Act No. 70, Laws of Puerto Rico, 1917, Vol. II, known as the Public Service Act. Section 48 of Act No. 70, as amended by § 7 of Act No. 2, Laws of Puerto Rico, 1927, Second Special Session, provides that the Commission may promulgate rules and regulations which shall take effect and shall have the force of law when approved by the Governor. No provision is made in either Act No. 70 or Act No. 221 for hearings on such regulations or for findings of fact, based on testimony, prior to their promulgation.

Provided the regulations are truly general, there can be no valid objection to this method of adopting them. The reason is that since general regulations are legislative in nature, the Legislature is not required to provide for a quasi-judicial hearing prior to their approval. *Pacific States Co.* v. *White*, 296 U. S. 176, 186; *United Gas Pipe Line Co.* v. *Federal Power Commission*, 181 F. 2d 796 (C.A. D.C., April 5, 1950) ; *Bowles* v. *Willingham*, 321 U. S. 503, 519; *Guiseppi* v. *Walling*, 144 F. 2d 608, 615 (C.A. 2, 1944) ; *Jordan* v. *American Eagle Fire Ins. Co.*, 169 F. 2d 281 (C.A. D.C., 1948) ; *Greer* v. *Railroad Commission of Texas*, 117 S.W. 2d 142 (Tex., 1938) ; 16 Calif.L.Rev. 208; Fuchs, Procedure in Administrative Rule-Making, 52 Harv.L.Rev. 259; Davis, Administrative Rules—Interpretative, Legislative, and Retroactive, 57 Yale L.J. 919; 27 Va.L.Rev. 806, 814; Davis, The Requirement of Opportunity to be heard in the Administrative Process, 51 Yale L.J. 1093; Hale, Hearings: The Right to a Trial, with Special Reference to Administrative

Powers, 42 Ill.L.Rev. 749. As we have seen, the Legislature made no provision for hearings by the Commission on such regulations. And without mandatory hearings there cannot of course be a requirement, express or implied, that in promulgating such regulations the Commission must make findings of fact supported by *testimony*. By the same token, those aggrieved by the regulations may not attack them pursuant to the procedure established by §§ 78–90 of Act No. 70. This is because, as presently noted in detail, those Sections contemplate the taking of testimony by the Commission and review by the courts of the orders of the Commission based solely on the record before the Commission.

We are not holding that no relief is available to an aggrieved party seeking to attack such regulations. We do not pass at this time on whether a complaint under § 14(c) of Act No. 221,[1] an injunction suit, a petition for a declaratory judgment, or some other remedy is available, in which the plaintiff would have the opportunity to demonstrate the invalidity of the regulations. *Cf.* Amadeo, *La Revisión Judicial de los Poderes de la Comisión de Servicio Público de Puerto Rico*, 16 *Rev.Jur. de la U.P.R.* 245. Such a plenary action would be a typical adversary proceeding of a judicial or quasi-judicial nature in which a sugar company as plaintiff would have the opportunity to adduce testimony in support of its position that particular regulations were invalid generally or as applied to it. *Cf. Columbia System* v. *U. S.*, 316 U. S. 407; *United Gas Pipe Line Company* v. *Federal Power Commission, supra*, and cases cited; *Ewing* v. *My-*

---

[1] Section 14(c) of Act No. 221 reads as follows: "[The company may] apply to the Commission by complaint, in the manner hereinafter provided in this Act, whenever such company claims to be aggrieved by any ruling, regulation, classification, or order which it is or has been required by the Commission to observe or comply with; and thereupon such sugar company shall be entitled to a full and fair hearing, and to a speedy determination of its complaint on the merits, by the Commission, and to all just and reasonable relief consistent with the rights and duties of such sugar company." (Matter in brackets ours).

*tinger & Casselberry, Inc.*, 339 U. S. 594; Davis, Forms of Proceedings for Judicial Review of Administrative Action, 44 Ill.L.Rev. 565. Here we hold only that since the Legislature made no provision for a hearing on regulations which are legislative in nature and since appeal under §§ 78–90 of Act No. 70 may be had only on the record before the Commission, appeal from an order adopting such regulations does not lie to the lower court, and consequently to this Court, under §§ 78–90.

■ On the other hand, the Legislature of course contemplated that the Commission would issue decisions and orders which affected particular cases. It provided in Act No. 70 for hearings by the Commission in such cases in the usual quasi-judicial form. Sections 62–77. It also provided in § 78 for appeal to the Tribunal of the District of San Juan from such decisions and orders. This appeal is based solely on the record before the Commission; no new evidence may be admitted by the lower court. Sections 79, 86. The district court determines "upon the record" if the order appealed from "is reasonable and in conformity with law", § 83; *Commission* v. *Havemeyer*, 296 U. S. 506; *In the Matter of Herminia Colón de Semidey*, 59 P.R.R. 247; *Municipality* v. *Public Service Comm.*, 51 P.R.R. 362. Appeal may be had to this Court from the judgment of the district court under § 90. Section 50 of Act No. 221 makes this procedure applicable to orders affecting sugar companies.

One further consideration as to the review provided by §§ 78–90 of Act No. 70 needs to be emphasized here. Provisions for this type of review "evidence Congressional recognition that an appellate court has no intelligible basis for decision unless a subordinate tribunal has made a record fully encompassing the issues." *United Gas Pipe Line Company* v. *Federal Power Commission, supra*, p. 799. Moreover, a record of the testimony plus a bare decision is not enough. Only if the Commission, after resolving conflicts

in the evidence, makes findings of basic or intermediate and ultimate facts, are the courts in a position to determine if the order of the Commission "is reasonable and in conformity with law". The findings must be sufficiently definite and certain to enable the courts to review the decision intelligently and to ascertain if the facts as found by the Commission afford a reasonable basis for the order. *Colorado-Wyoming Co.* v. *Comm'n.*, 324 U. S. 626, 634; *U. S.* v. *Carolina Carriers Corp.*, 315 U. S. 475, 488; 1946, Annual Survey of American Law, pp. 227–229; 1945, *id.*, p. 223; *Saginaw Broadcasting Co.* v. *Federal Communications Commission,* 96 F. 2d 554, 559–61, cert. denied, 305 U. S. 613; *Swars* v. *Council of City of Vallejo*, 198 P. 2d 955 (Calif., 1948); Annotation, 146 A.L.R. 209; Jaffe, Administrative Findings or The Ameer in America, 34 Cornell L.Q. 473; Davis, Official Notice, 62 Harv.L.Rev. 537. *Cf.* Gellhorn, Administrative Law, Cases and Comments, pp. 770–80; 55 Harv.L.Rev. 279; O'Reilly, Administrative Findings of Fact, 11 Fordh. L.Rev. 30. See *South P.R. Sugar Co.* v. *District Court,* 62 P.R.R. 811; *Baetjer* v. *Court*, 56 P.R.R. 570, 574; *Mayagüez Sugar Co.* v. *Court of Tax Appeals*, 60 P.R.R. 737, 747–49; *Meléndez* v. *Metro Taxicabs, Inc.*, 68 P.R.R. 709. As we shall see, the Legislature recognized this problem and intended that under both Act No. 70 and Act No. 221 the Commission shall make appropriate findings of fact based on the testimony when entering individual orders subject to judicial review.[2]

---

[2] We need hardly add that the nature of the findings required depends on the complexity of the case. The Legislature did not intend that the Commission shall be required to make detailed and elaborate findings on every trivial matter on which it was called to act. *Cf. Am. Railroad Co.* v. *Public Service Commission,* 62 P.R.R. 340; Davis, Administrative Powers of Supervising, Prosecuting, Advising, Declaring, and Informally Adjudicating, 63 Harv.L.Rev. 193, 236, *et seq.* But that salutary principle of effective administration does not warrant deviation from the requirement for sufficient findings in cases as important and complicated as the fixing of rates and services in the sugar industry.

The foregoing makes clear, in principle at least, the distinction between general regulations, which are not reviewable under §§ 78–90 of Act No. 70, and an order involving a particular company entered on the basis of findings supported by testimony, which may be appealed to the Tribunal of the District of San Juan and ultimately to this Court, in order that the courts may determine if it "is reasonable and in conformity with law."

█ What we have said does not mean, however, that the commission may, under the guise of general regulations, issue orders which are general in form but which in effect have an individual impact as to issues on which Act No. 221 requires individual action by the Commission after a hearing, findings of fact based on testimony, and an order which is subject to judicial review. Although mislabeled as a "regulation", such action by the Commission would be in substance an order of the Commission and therefore reviewable under §§ 78–90 of Act No. 70, with all the safeguards and requirements already noted.

██ In the light of the foregoing, we turn to the so-called General Regulations involved herein. We consider first the manner in which they were adopted. The Commission itself drafted proposed Regulations and submitted them to the companies. A so-called hearing was then held at which testimony in the nature of general comment on some of the proposals was taken. After the hearing, the Commission made some modifications and added some new matter of which the companies had no previous notice and on which no hearing was ever held. The Commission thereupon adopted this new draft as the "General Regulations for the Sugar Companies" by virtue of the order which was thereafter affirmed by the judgment of the lower court and which is now before us.

The order of the Commission recited that it was being approved pursuant to § 38 of Act No. 221 and that the Regu-

lations would not take effect until approved by the Governor, as required by § 48 of Act No. 70, as amended by Act No. 2 of 1927, which is applicable by virtue of § 19 of Act No. 221. Thereafter, the General Regulations were approved by the Governor. The order contains no findings of fact, based on testimony, either generally or as applied to particular companies. Nor does it recite either generally or specifically that the Regulations are in conformity with the various standards established by Act No. 221 in connection with rates, services and facilities. It states only that in the judgment of the Commission the Regulations are "legal and reasonable" and that although they apply generally and uniformly, Article 21 provides that the Commission may for just cause exempt a company from compliance with a provision of the Regulations for a reasonable time and under reasonable conditions.

It is obvious that in the instant case the Commission followed the procedure laid down for promulgating general regulations rather than that provided for orders affecting individual cases. It is true that a hearing was held. But it was general rather than adversary in character. It was somewhat similar to the type of hearing which is held under § 4 of the Federal Administrative Procedure Act before regulations which are legislative in nature are put into effect. 5 U.S.C.A. § 1004; *United Gas Pipe Line Company* v. *Federal Power Commission, supra.* Although not required by our Act, that type of hearing should be encouraged to give the Commission the benefit of the views of all concerned before such regulations are promulgated. But it can scarcely be held to be an adequate substitute for the hearing, findings, and judicial review provided by Act No. 70 for individual orders. *Jordan* v. *American Eagle Fire Ins. Co., supra.*

The Commission itself clearly understood that it was conducting the type of hearing usually held in connection with general regulations rather than the type of hearing required

to decide an individual case. It cited § 38 as the source of its authority to adopt the Regulations.[3] The latter are made generally rather than individually applicable. The Commission made no findings of fact resolving conflicts in the "testimony", if that word can properly be used for what took place at the hearing. New matter, not found in the original draft of the proposed Regulations and not discussed at the hearing, appears in the Regulations as approved by the Commission. Finally, the Regulations were submitted to and approved by the Governor, as required by § 48 of Act No. 70, as amended. While the latter step is appropriate for regulations legislative in nature, the Legislature quite properly did not provide that ordinarily orders resulting from an adversary proceeding of a quasi-judicial nature and having an individual effect should be submitted to the Governor for his approval. On the contrary, it provided for direct review of the latter by the courts without the intervention of the Governor.

It is therefore clear that if any of the so-called General Regulations were in effect individual orders rather than truly general regulations, they are invalid because no hearings were held, and no findings of fact, based on testimony, were entered, as required by Act No. 70 for orders of that type. But in seeking to determine if any of the Regulations were individual rather than general, we must bear in mind certain considerations with reference to the sugar industry. Act No. 221 among other things vests in the Commission the power and duty (1) to assure fair treatment to *colonos*,

---

[3] Although it did not do so in the original order, in the lower court and in this Court the Commission also relies on § 22 of Act No. 221, reading as follows: "The Commission shall have the power to regulate and inspect every sugar company and shall approve and put in force the rules and regulations necessary therefor." However, as the text of that Section clearly shows, it reiterates but adds nothing to the powers conferred on the Commission by § 38 insofar as the question now before us is concerned.

which is made necessary by the advantageous situation of the companies, and (2) to fix for the companies, which are declared to be public utilities, a fair return on the fair value of their property devoted to the public service. *Compañía Azucarera del Toa* v. *Public Service Commission, ante,* p. 197; *People* v. *A. Roig, Sucrs.,* 63 P.R.R. 17, affirmed in 147 F. 2d 87 (C.A. 1, 1945). These two concepts are related: the rate of return to the companies, although required to be fair, must be so fixed by the Commission that the *colonos* will receive fair treatment, which the Legislature deemed they would not receive without the protection of Act No. 221 and the regulations and orders of the Commission pursuant thereto. By the same token, under Act No. 221 the various services and facilities to be furnished by the companies to the *colonos* must be regulated by the Commission so as to carry out these objectives of the Act.

■■ For purposes of the problem presently before us, the important thing is that, in making the companies public utilities and in providing that each company must be permitted to earn a fair return on the fair value of its property pursuant to the complicated formula laid down in *Smyth* v. *Ames,* 169 U. S. 466, the Legislature in effect directed the Commission to treat each company as an *"individual problem". Compañía Azucarera del Toa* v. *Public Service Commission, supra,* p. 208, footnote 6. As we pointed out in the *Toa* case, this was a complete reversal of the philosophy behind Act No. 112, Laws of Puerto Rico, 1937, which established uniform standards and rates for the grinding of sugar cane by the companies for the *colonos. Vidal* v. *Fernández,* 104 F. 2d 606 (C.A. 1, 1939), cert. denied, 308 U. S. 602. See *Luce & Co.* v. *Minimum Wage Board,* 62 P.R.R. 431; *Opp. Cotton Mills* v. *Administrator,* 312 U. S. 126.

The authority of the Commission to solve the "individual problem" of fixing rates for each company, which it is required to do by individual orders, stems primarily from

§ 21 of Act No. 221.[4] But in lumping rates and services together in § 21, the Legislature recognized that rates, services and facilities are inextricably woven together. That is to say, the Commission could not order services to be rendered without at the same time or previously fixing the rates to be charged therefor. To hold otherwise would be to ignore the mandate of the Legislature that each company shall receive a fair return on the fair value of its property.

It is true that § 21 makes no mention of a hearing or individual findings of fact for each company. But § 28, in a somewhat overlapping fashion, provides for the establishment of facilities and services "after hearing". Also, §§ 24–27, which are likewise concerned with rates, services and facilities, specifically recite that hearings thereon shall be held. Moreover, § 50 of Act No. 221 provides that all hearings by the Commission under the Act shall be in accordance with §§ 62–90 of Act No. 70. And we have already noted that under those Sections not only a hearing but findings of fact which will enable intelligent judicial review are required.

These provisions of Act No. 221 demonstrate that the Legislature was aware that the individual rates contemplated by Act No. 221, which must provide for a fair return, on the fair value of its property for each company under its own special circumstances, could be established only by virtue

---

[4] Section 21 of Act No. 221 reads in part as follows:

"The Commission shall have the power and it shall be its duty to fix and determine the just, due, equal, and reasonable prices, rates, tariffs, compensation, · standards, or conditions for the manufacture, process, or refining of sugar, to· be established, demanded, required, charged, or collected by sugar companies for any service rendered or furnished; and the just, due, equal, reasonable and proper regulations and practices, as affecting said prices, rates, tariffs, compensations, standards, and conditions for the processing or refining of sugar to be observed by any of said sugar companies. The Commission may classify said prices, rates, tariffs, compensations, standards, and conditions for the processing and refining of sugar. The Commission shall have power to alter, amend, modify, or revoke any rate, tariff, compensation, standard, or condition now in force which is not just, due, equal, and reasonable."

of hearings and findings of fact. This becomes even more evident when we bear in mind that orders fixing such rates are subject to judicial review under Act No. 70. In the absence of a hearing, testimony, and findings based on the testimony, as we have seen the judicial review would be a meaningless mockery since there would be no record and findings from which the courts could determine if the order of the Commission establishing individual rates for each company, under its special circumstances, "reasonable and in conformity with law". And, as already noted, the services which must be rendered to earn these rates are in the same category and could not be fixed except individually and as a part of the process of fixing the rate structure for each company.[5]

 It is obvious that those provisions of the General Regulations which directly affect the services to be rendered by the companies cannot stand for two reasons. In the first place, they are void because of the failure of the Commission to date to fix valid rates, temporary or permanent, to be charged therefor. *Compañía Azucarera del Toa* v. *Public Service Commission, supra.* In the second place, apart from

---

[5] In the *Toa* case the Commission argued that "We do not consider that it would be good public administration to proceed to establish permanent rates without having regulated the sugar industry in all its aspects." However, we held in the *Toa* case that this view of the Commission could not be permitted to override the mandate of the Legislature in Act No. 221 that temporary rates to be charged by a particular company could not be fixed until a proceeding for permanent rates was instituted. For the same reason, no regulation or order may be issued by the Commission, under the guise of a general regulation applying uniformly to all the companies, if it is directly concerned with the services to be rendered by a particular company, in the absence of a valid order by the Commission fixing either the temporary or permanent rates the said company may charge for such services. As we pointed out in a similar situation in the *Toa* case, the plea of lack of funds by the Commission cannot be used to ignore the command of Act No. 221 that services, an inextricable part of rates, cannot be ordered without fixing the rates to be charged therefor by each company as an "individual problem." The remedy is appropriation of additional funds for the Commission or amendment of Act No. 221.

the fact that services may not be ordered by the Commission without fixing rates therefor, the so-called Regulations herein, to the extent that they directly affect services to be rendered by the companies, are not general regulations at all but individual orders which as we have seen require under Acts Nos. 70 and 221 a hearing, testimony, findings of fact, and orders subject to judicial review. And these required steps were not taken here.

It cannot be gainsaid that due to the failure of the Commission (1) to fix rates and (2) to hold hearings, make findings of fact and enter orders subject to judicial review, those provisions of the General Regulations which directly affect the services to be rendered by the companies are invalid. Article 7, providing for hauling and delivery of cane; Article 11, providing for liquidation of cane and disposition and payment of sugar; Article 12, providing for liquidation of molasses; and Article 19, providing for rates to be charged, fall into this category. In view of the provisions of Act No. 221 and of the subject matter of these Articles, the latter could not be adopted as General Regulations pursuant to § 38 of Act No. 221 and are therefore null and void.

On the other hand, the remaining regulations are in a different category. Articles 1 to 4, reciting the purpose, effective date, applicability and terms and definitions, have no substantive content and therefore need not concern us. Article 5 prescribes the steps which the companies must take before the crop season. Paragraph (a) provides for a 20-day notice to the Commission of the date of the beginning of the crop and the estimated tonnage for the same. Paragraph (b) requires the colonos to report to the centrals, on forms supplied in triplicate by the centrals but drafted by the Commission, not later than November 15 of each year, prior to the beginning of the crop season, certain information as to twelve questions with respect to their farms. As

the companies point out in their brief, the last eight of these 12 requirements were not in the original proposed Regulations. They were inserted by the Commission after the hearing and there is therefore no evidence as to them in the record.

In the same way, paragraphs (c), (d) and (e) were added to the Regulations after the hearing. Paragraph (c) provides that the companies shall appoint *colono* inspectors to estimate plantings and tonnage, which shall appear as a preliminary estimate in the form made out by the *colonos*. Paragraph (d) provides that on or before December 1 the companies must transmit to the Commission a copy of each of the reports filed by the *colonos* together with certain calculations based on these reports. Paragraph (e) provides that, in preparing a "Tentative Program of Delivery and Grinding", the company shall not include *colonos* who have not reported in accordance with the previous paragraphs, without previous authorization of the Commission, which could be granted by the Commission if the *colono* thereafter files his report which is transmitted by the company to the Commission with its observations and recommendations.

Paragraph (f) requires the companies, not later than 15 days before the crop, to present to the Commission a "Tentative Program of Delivery and Grinding" containing estimates of tonnage of different types of cane and of the daily production. It also provides for posting of the Program in a place in the office of the central where the *colonos* can see it. Paragraph (g) provides for the checking and the calibrating of all weighing and measuring apparatuses used by the centrals, prior to the beginning of the crop, by the Bureau of Weights and Measures of the Commission. Paragraph (h) provides that the centrals will have the standard equipment needed to carry out the purposes of paragraph (g). Paragraph (i) requires centrals of the north, east, and in-

terior to be ready to grind on January 15 and of the south and west on December 15, unless the Commission for just cause extends the term.

In Article 6, paragraph (a) fixes the dates for the beginning of grinding in five districts as classified by the Commission, unless the Commission authorizes different dates. Paragraph (b) provides that the crop shall extend for the length of time necessary to grind all the cane of colonos, and that no central may end the crop without having ground all the colonos' cane unless it has previously made arrangements for grinding all left-over cane at some other mill, and also provides that the companies will notify the Commission 20 days in advance of the probable date of termination. Paragraph (c) provides that the Commission, of its own motion or on petition after notice and hearing, may fix different dates when the circumstances so justify in the judgment of the Commission. Paragraph (d) divides the centrals into five districts, northern, southern, eastern, western and interior.

Article 8 requires that cane be weighed at specified places; that cane must be received at the mill in the order of its arrival; and that the Commission may require the type and capacity of scales it deems appropriate.

Article 9, paragraph (a), requires the companies to grind cane of colonos within 24 hours of its arrival except in cases of force majeure. Paragraph (b) provides that paragraph (a) does not apply to cane in the "batey" when the mill stops operating for cleaning at the end of the week. Paragraph (c) provides that cane received by the mill must be free of straw and earth within reasonable limits. Paragraph (d) provides that accidentally burnt cane must be ground with preference over any other cane except cane previously received in the "batey". Paragraph (e) provides that in case of strike, breakdown, or accident, etc., which prevents the grinding of cane, the central shall notify

the *colono* and the *colono* may, upon approval of the Commission, grind his cane at another central until notified that service is resumed.

Article 10 establishes the formula which must be used by the central to determine the sugar content and the participation which pertains to the *colonos*. In their brief the appellants state that "the Commission has simply taken a formula which is in current use and made it obligatory."

Article 13 permits *colonos* to have their own inspectors and requires any proposed system of *colonos'* inspectors to be submitted to the Commission for approval and regulation. Article 14 requires the companies to render certain reports of a technical nature at various intervals.

Article 15 (*a*) provides that each company is limited to grinding cane from lands which produced cane ground at the central during the 1943 crop, except where the Commission has authorized transfers. As to this Article, the appellants state in their brief, "The practical effect is to say 'Do what you have always done.' It presents no problem for the purposes of this appeal."

Paragraph (*a*) of Article 16 provides that the companies may continue the system of accounting they have previously used until the Commission approves a uniform system of accounting. Paragraph (*b*) provides that for rate-making purposes the Commission will use the operations of the companies for a calendar year. Paragraph (*c*) provides that if the crop begins before January 1, the expenses incurred and receipts earned shall be allocated to the following year.

Article 17 recites that the companies shall keep all their facilities in good physical condition in order to render adequate and efficient service. Article 18 requires reports to the Commission of accidents. Article 20 revokes any conflicting orders or regulations. Article 21 provides that the Commission may for just cause exempt any company from compliance with any of the provisions of the Regulations for a

reasonable time under reasonable conditions. Article 22 recites that companies not complying with the Regulations will be subject to the penalties provided in Acts No. 221 and No. 70. Article 23 provides that the Articles are separable and are to remain in effect if any of the Articles are declared invalid.

As none of the Articles just described fits into the category of individual orders, they were not reviewable under §§ 78–90 of Act No. 70. The appellants therefore misconceived their remedy in proceeding thereunder as to these Articles. We express no view as to validity of these Articles. As already noted, other procedures may exist whereby the companies may initiate proceedings to raise that question. But the lower court had no jurisdiction in this case. As to these Articles, the judgment of the San Juan Tribunal will therefore be set aside and the case dismissed for want of jurisdiction.[6]

The result we have reached makes it unnecessary to consider the remaining contentions of the appellants.

For the reasons stated, the judgment of the Tribunal of the District of San Juan will be set aside, and a new judgment entered reversing the order of the Public Service Commission adopting Articles 7, 11, 12 and 19 of the General Regulations, and dismissing for lack of jurisdiction the proceeding as to Articles 1–6, 8–10, 13–18 and 20–23 of the said Regulations.

Mr. Justice Negrón Fernández did not participate herein.

---

[6] The Commission did not raise the contention that the lower court had no jurisdiction as to these Articles of the Regulations. We have, however, examined this point under the familiar rule that questions of jurisdiction may and should be considered *motu proprio*. *Russell & Co.* v. *Public Service Commission*, 66 P.R.R. 355.