CENTRAL SAN VICENTE, INC., Petitioner, *v.* SUGAR BOARD OF PUERTO RICO, Respondent.

No. 9. Argued April 4, 1955.—Decided November 14, 1955.

*James R. Beverley, José López Baralt, R. Rodríguez Lebrón,* and *Francisco Castro Amy* for petitioner. *Alejandro Romanace* for respondent. *Antonio Riera* for Land Authority, intervener.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Availing themselves of the provisions of § 3 of the Sugar Act—No. 426 of May 13, 1951 (Sess. Laws, p. 1138)—the respective administrators of the proportional-profit farms known as "Ingenio" and "San Antonio," both owned by the Land Authority, gave notice in October, 1953 to the centrals concerned, through the Sugar Board, of their intention to shift from Central San Vicente, Inc. to the Central Plazuela the grinding of 100 percent of their cane. The Central San Vicente, Inc. objected to the proposed change, alleging that it had acquired, through contractual stipulations, the right to grind all the cane cultivated in those farms. The controversy between the parties concerned was submitted to the Sugar Board for decision on the basis of a stipulation of fact and of certain documentary evidence, from all of which it appears as follows: In the receivership proceedings had in *The People* v. *Rubert Hermanos, Inc.*, quo warranto No. 2, the "Ingenio" farm was sold in 1946 to the Land Authority by deed No. 21, executed on August 18 of that year before Notary Antonio Riera, one of the conditions being that the cane produced by that farm "shall hereafter be ground in the Central San Vicente . . . until otherwise provided by

the Public Service Commission of Puerto Rico." [1] Pursuant to the Consent Decree entered in *The People* v. *Carmen Centrale, Inc., et al.*, quo warranto No. 15, Carmen Centrale, Inc. sold the "San Antonio" farm to the Land Authority by deed No. 14 executed on May 6, 1946, before Notary Aureliano Rivas, subject to a similar condition to the effect that the purchasing Authority bound itself to grind all the cane in the mills of Carmen Centrale, Inc., its successors, or assigns. [2] The Consent Decree and the deed of sale in question expressly provided that all stipulations therein were subject to present and future laws and regulations of the governments of the United States and Puerto Rico.

---

[1] In that quo warranto proceeding this Court approved the said deed No. 21. One of its clauses provides:

"Grinding of Authority Cane.—All cane produced by the Land Authority of Puerto Rico in the farms turned over to it by Rubert Hermanos, Inc. shall hereafter be ground in Central San Vicente, including the cane produced by the 'Monte Grande', 'Lizas', *'Ingenio'*, and 'Lechería Pastillo' farms, until otherwise provided by the Public Service Commission of Puerto Rico." (Italics ours.)

[2] Paragraph 10 of the Consent Decree reads as follows:

"10.—That the Land Authority of Puerto Rico so far as it may legally do so, shall impose upon itself and all future owners and lessees of the lands to be sold hereunder the obligation and duty of grinding all sugar cane grown and cultivated thereon at the factory of Carmen Centrale, Inc., its successors or assigns; and said Carmen Centrale, Inc., its successors or assigns shall be obligated to grind such cane, it being understood, however, that nothing herein contained shall be construed as imposing upon the Land Authority of Puerto Rico, or future owners and lessees of the lands, the obligation of delivering for grinding canes under an unprofitable or confiscatory basis . . . It is further understood that nothing herein contained shall be construed as obligating the Land Authority of Puerto Rico, its successors or assigns to grow canes on the lands which may be sold hereunder or as obligating Carmen Centrale, Inc., its successors or assigns to continue in the business of manufacturing sugar and molasses. Nothing herein contained shall be intended to imply that the Land Authority of Puerto Rico, its successors or assigns, may not arrange to grind any part of cane grown on the aforesaid lands at another central or centrals, provided that arrangements are made with Carmen Centrale, Inc. whereby an equal amount of cane from outside sources is supplied to said Carmen Centrale, Inc. for grinding under circumstances as to haul and other conditions which shall not be more burdensome to Carmen Centrale, Inc. than those existing with respect to the cane so transferred to such other central or centrals."

All rights acquired by Rubert Hermanos, Inc. and Carmen Centrale, Inc., by virtue of the afore-mentioned deeds Nos. 21 and 14, were assigned to Central San Vicente, Inc., the new corporation which was organized subsequent to the quo warranto proceedings.

During the 1953 grinding season, the "Ingenio" and "San Antonio" farms ground in Central San Vicente only 30 percent of their cane by virtue of an agreement to the effect that an equal amount of cane from those farms which was not ground by Central San Vicente would be supplied to it for grinding by other proportional-profit farms, which was not done. And this is the reason why Central San Vicente, Inc., which has sufficient capacity to grind all the cane from the "Ingenio" and "San Antonio" farms, objected to the shifting of the grinding.

Based on these facts, the Sugar Board issued an order dismissing the objection of Central San Vicente, Inc. to the transfer of the grinding, because (1) the contracts entered into by the Land Authority and Rubert Hermanos, Inc. and Carmen Centrale, Inc. are in conflict with the Sugar Act in force as respects the cane-grinding clauses, and (2) those contracts are contrary to the public interest as set forth in that Act.

The Central San Vicente, Inc. has petitioned this Court to review the order of the Board. It contends, essentially, that that order is erroneous because (a) the Sugar Act does not confer upon a colono the right to shift the grinding of his cane from one central to another in violation of a previously existing contract, nor can it be inferred that the legislative intent was to impair the grinding rights acquired prior to that Act; (b) the order sought to be reviewed is inconsistent with the regulations of the Board; and (c) if the Sugar Act purported to defeat or set aside rights vested prior to its operation, it would be repugnant to the contract clauses and the due process of law of the Constitution of Puerto Rico and the Constitution of the United States.

■■ The planting, cultivation, and grinding of sugar cane is the principal industry of Puerto Rico, upon which its prosperity and the welfare of its people depend substantially. In view of the importance of this industry in relation to the Island's economy, there is no controversy as to the fact that this industry entails a great public interest, and is therefore subject to regulation by our Legislature in the exercise of the police power of the State. *People* v. *Rubert Hermanos, Inc.*, 53 P.R.R. 741; *Vidal* v. *Fernández*, 104 F. 2d 606; *People* v. *A. Roig, Sucrs.*, 63 P.R.R. 17. Act No. 221 of May 12, 1942 [3] (Sess. Laws, p. 1176) was in force when the contracts of sale were made involving the cane-grinding clauses which have given rise to the present controversy. This Act converted all sugar centrals into public-service companies and placed them under the jurisdiction of the Public Service Commission. Section 42 ordered the Commission to proceed to determine and put in force the production zone of every sugar company, and § 43 provided that every final franchise granted by the Commission to any natural or artificial person or to any sugar company would determine the production zone of the entity, the grantee of such franchise, and prohibited the latter from processing or refining sugar, using as raw material sugar cane produced outside of the production zone assigned to it. While the regulation of the zoning question was pending, the Public Service Commission provided that every sugar central would grind only the cane from the same lands which produced the cane ground by such sugar central during the 1943 grinding season, and prescribed the procedure for the transfer of cane from one central to another in certain cases. The year 1949 was later established as the basic period.[4] It was on the

---

[3] The constitutionality of Act No. 221 was upheld in *People* v. *A. Roig, Sucrs.*, *supra*, affirmed in *Roig* v. *People of Puerto Rico*, 147 F. 2d 87.

[4] Zoning Order promulgated on April 12, 1944, by the Public Service Commission and Art. 15 of the General Regulations for Sugar Companies approved June 24, 1946, amended on February 14, 1949.

authority of these regulations that the Land Authority agreed to grind the cane produced by the "Ingenio" and "San Antonio" farms in the mills of the assignees of Central San Vicente, Inc. However, Act No. 221 of 1942 was thereafter repealed by Act No. 426 of May 13, 1951. The new Act, now in force, maintained the regulation of the sugar industry by the State, although in a different form. "Under the latter Act, the mills were no longer considered as public utilities . . .";[5] it created an administrative agency known as the Sugar Board, with authority to implement the Act and to enforce its provisions, and to decide any disputes that may arise between centrals and colonos;[6] the provisions of Act No. 221, bearing on production zones, are omitted and, instead, provision is made for free competition among centrals to obtain a supply of sugar cane from colonos for the processing of sugar.[7] In this connection, Act No. 426 provides:

"Section 3.—No sugar central shall refuse to grind the cane of a *colono* or of his successors or successors in interest, who may have been a *colono* of said central during any of the three (3) years prior to the date on which he may offer said cane to be ground, and the central shall give preference to said *colonos* for grinding their cane over the new *colonos; Provided,* That in such cases where a *colono* shall have been a *colono* for two or more centrals, the central shall be bound to grind the proportional part of the crop which said *colono* delivered to said central to be ground during the last year in which he was a *colono* thereof.

"For a *colono* to be entitled to shift from the central where he grinds his canes to another central, he shall be under obligation to notify the centrals concerned of his intention to make

---

[5] *A. Roig, Sucrs.* v. *Sugar Board,* 77 P.R.R. 324.

[6] Each proportional-profit farm established under the provisions of Title IV of the Land Law is a *"colono."* Section 2 of the Sugar Act of 1951.

[7] For a comparative study of the provisions of both Acts—No. 221 of 1942 and the Sugar Act of 1951—see *"Local Regulation of the Sugar Industry in Puerto Rico,"* 22 Revista Jurídica de la Universidad de Puerto Rico, p. 385.

said change not later than the first day of November prior to the grinding season in which he desires to make such change.

"The central shall be bound to grind the cane of the new *colonos,* unless the Board exempts the central from such obligation after it is shown to the Board that the central lacks sufficient capacity to assume the grinding of the cane from such *colonos.*

"Any violation of this section shall be punished under the provisions of sections 28, 29, and 30 of this Act."

The provisions of this section confer upon the *colono* the right to shift from the central where he grinds his cane to another central, without any other requirement than to notify the centrals concerned, not later than the first day of November prior to the grinding season in which he desires to make the change, of his intention to make such change. Once the requirement of notice is met, the central is bound to grind the cane of the new *colono* unless the Sugar Board exempts the central from the performance of such obligation after it is shown to the Board that the central lacks sufficient capacity to assume the grinding of the cane of the new *colono.* Aside from this exception, the central is bound to grind the cane of the new *colono.* The Board is without power and authority to exempt the central from the performance of this legal obligation except in the only instance already pointed out—that the productive capacity of the central is insufficient.

The petitioner maintains, however, that the application of the Sugar Act of 1951 to contracts executed prior to its enactment would violate the constitutional clause prohibiting the enactment of laws which impair the obligation of contracts. This, we believe, is not the situation here. What are the contractual obligations which petitioner alleges would be impaired by the Sugar Act? They are those assumed by the Land Authority by virtue of deeds Nos. 14 and 21, to grind hereafter the cane from "Ingenio" and "San Antonio" farms in Central San Vicente and in the mills of the Car-

men Centrale, Inc. respectively. The obligations thus assumed by the Land Authority were those obligations which the Act and the regulations which implement the same had already imposed upon the parties at the time the production zones of each sugar central were determined. In the absence of contractual clauses, the legal situation, as to the place where the cane of the Land Authority farms would be ground, would be the same. In other words, under the laws then in force the Land Authority could not bind itself to grind its cane outside the production zone assigned by the Commission to each sugar central. For this reason, the cane-grinding agreement set forth in deed No. 21 would be in force until otherwise provided by the Public Service Commission. Likewise, the agreements embodied in deed No. 14 were made subject to present and future laws. This reservation was valid even if it had not been set forth in the contracts, since, notwithstanding the constitutional clause invoked by petitioner, the State retains authority over contracts to safeguard the vital interests of its people. The rule is that all contracts are made subject to this paramount authority, which includes not only the protection of health, morals, and safety of the people but extends to their economic needs as well. *Chicago & Railroad* v. *Nebraska*, 170 U.S. 57; *Veix* v. *Sixth Ward Assn'*, 310 U.S. 32. The rule is that if a business is subject to regulation by the State, such as the sugar industry in Puerto Rico, contracts made in its conduct are subject to such regulation. *Erie R.R. Co.* v. *Public Util. Commrs.*, 254 U.S. 394; *Rast* v. *Van Deman & Lewis*, 240 U.S. 342. Reservation of the essential attributes of the sovereign power should be read into contracts of this nature. *Home Bldg. & L. Assn.* v. *Blaisdell*, 290 U.S. 398.

Pursuant to these principles, our Legislature has authority to change that phase of the sugar industry relative to production zones. The exercise of this power could not be

768

avoided by the parties by making contracts reaching into the future. *Union Dry Goods Co.* v. *Georgia P.S. Corp.*, 248 U.S. 372; *Dillingham* v. *McLaughlin*, 264 U.S. 370; *Taylor* v. *Brown*, 137 F. 2d 654; *Philadelphia Coke Co.* v. *Bowles*, 139 F. 2d 349.

That was precisely what the Sugar Act did. The original *production zones* were eliminated and, instead, provision was made for free determination by the *colono* to choose the central which will grind his cane. The *colono's right* to make such determination was incorporated, through the exercise of the police power of the State, in the contracts made prior to the enactment of the Act. It cannot be inferred from the context of the statute that the legislative intent was otherwise. The alleged violation of the contract clause of the Constitution was not committed in the instant case. This being so, and in view of the fact that the order issued by the Board in this case is not erroneous, we need not discuss other questions posed by the parties.

The order of the Board will be affirmed.

Mr. Justice Sifre did not participate herein.